Bert R. Wiggs and Elsie M. Wiggs, his wife, Appellants *v.* The Northampton County Hanover Township Board of Supervisors et al., Appellees.

Argued November 20, 1981, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*B. Ryland Wiggs, III,* for appellants.

*Wesley M. Wasylik,* for appellees.

114

OPINION BY JUDGE BLATT, March 2, 1982:

Before us is an appeal brought by appellants, land-owners, Bert R. and Elsie M. Wiggs of an order of the Court of Common Pleas of Northampton County denying their motion to take off a non-suit. In their motion before the court below the appellants sought to have the appellees, the Hanover Township Planning Commission and Board of Supervisors (Township), sign and thereby indicate their approval of a subdivision plan which the appellants had submitted.

The facts in this case are not in dispute. On April 5, 1976, the appellants submitted a mandatory "Pre-Application Sketch Plan" to the Township and on May 27, 1976, after reviewing the plan, the Township informed them that the proposed plan did not comport with certain[1] township ordinances and regulations. At a meeting of the Board of Supervisors on June 8, 1976, the appellants were again informed that certain changes were necessary in order for their plan to be approved and they then decided to submit a revised plan in part on June 18, 1976, and in final form on June 23, 1976. Finally, on August 12, 1976, the Township notified the appellants that their plan was

---

[1] Specifically: (1) Article III, Section 9(C) of the Hanover Township and Land Development Regulation (Regulations) which requires a minimum setback from the right-of-way lines of both streets; (2) Article III, Section 3(D) of the Regulations which requires proposed subdivisions and land developments be coordinated with the existing nearby neighborhood so that the community as a whole may develop harmoniously; and, (3) Article III, Section 7 of the Regulations which requires sidewalks to be installed within the rights-of-way of all arterial and collector streets located in or adjacent to all subdivisions. We note, that the Township and the court below also found that the plan violated Section 10(D) (1) of the Regulations; however, this section was not included in the record nor mentioned in the pleadings. Inasmuch as we believe that its exclusion or inclusion would not affect the outcome of this case, we will exclude it.

denied because it still was not in compliance with the Township's land development regulations. The appellants then petitioned the court below in mandamus seeking to have their plan deemed approved by operation of Section 508 of the Pennsylvania Municipalities Planning Code. (MPC)[2] which in pertinent part, provides as follows:

All applications for approval of a plat ... whether preliminary or final, shall be acted upon by the governing body or the planning agency within such time limits as may be fixed in the subdivision and land development ordinance but the governing body or the planning agency shall render its decision and communicate it to the applicant not later than ninety days following the date of the regular meeting of the governing body or the planning agency ... next following the date the application is filed....

....

(3) Failure of the governing body or the planning agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented....

The appellants argued below, that their plan should have been deemed approved inasmuch as more than 90 days had elapsed between their April 5, 1976 preliminary plan submission and the Township's August 12, 1976 denial. The court below, after hearing testimony, found that inasmuch as substantial changes were voluntarily made by the appellants to their plan on June 18 and 23 of 1976, the 90 days would commence on either of these dates and,

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10508.

therefore, that the statutory period had not expired. *DePaul Realty Co. v. Borough of Quakertown*, 15 Pa. Commonwealth Ct. 16, 324 A.2d 832 (1974). Accordingly, the court granted the Township's motion for non-suit and later denied the appellants' request to take off the non-suit. This appeal followed.

We agree with the court below that the instant situation is controlled by our decision in *DePaul Realty*. In that case the applicant/landowner filed a *revised* subdivision plan because a denial of a parking variance sought by him revealed a defect which existed in his original subdivision plan. We held there that the submission of the revised plan was voluntary and inasmuch as the changes therein were substantial, Section 508's 90 day period began to run anew from the filing date of the revised plan. We recognized that "DePaul had an option. It could have insisted on its rights under the originally filed plan, and if the Borough Council had not acted within 90 days in such case, then DePaul would have been entitled to approval of its plans." *Id.* at 23, 324 A.2d at 835. Even though placing the applicant in such a dilemma, at first blush, might seem harsh, we observed, acknowledging the often technical nature of such plans, that:

> The logic of this holding is realized when one notes that under DePaul's contention, the applicant could file revised plans on the 89th day, and the governing body would have to review the revised plans and render its adjudication within 24 hours. Clearly, this was not the intent of the Legislature.

*Id.*

We reiterate here the *DePaul Realty* proposition that the public's interest in uniform land development must take precedence over private interests, *see* Section 1922(5) of the Statutory Construction Act of 1972, 1

Pa. C. S. §1922(5), and, we choose not to retreat, as the appellants urge, from our decision in that case. The issue here becomes, therefore, whether or not the appellants' revised plan, which was submitted on June 18 and 23 of 1976, was both *voluntarily offered* and *substantially different* from their April 5, 1976 preliminary plan. *DePaul Realty*.

Our close review of the record indicates that the court below was correct. Specifically, a comparison of the original preliminary plan with the revised plan discloses that the appellants made numerous[3] corporeal changes — far beyond the revisions which the applicant made in *DePaul Realty*. Furthermore, the record indicates that the appellants submitted their revised plan "voluntarily" even though they incorporated certain comments[4] made by the Township in its letter of May

---

[3] Specifically: (1) the rotation of certain lots to permit safer vehicular access; (2) the inclusion of the width of paved portions of local roads as required by Article III, Section 4(D) of the Regulations; (3) the inclusion of paved cartway data as required by Article III, Section 5(G)(9); (4) the inclusion of a street profile and cross-section as required by Article III, Section 5(G)(12); (5) the addition of paving and curbing data as required under Article III, Section 5 (G)(13); (6) the inclusion of drainage easements as required by Article III, Section 6; (7) the inclusion of sidewalk in all street rights-of-way as required by Article III, Section 7(B)(1); (8) the elimination of access across planting screens as required by Article III, Section 9(F); (9) the inclusion of a fire hydrant as required under Article III, Section 15(D)(1); (10) the inclusion of utility easements as required by Article III, Section 17(B); (11) the inclusion of ground surface profiles over all proposed streets as required by Article V, Section 1(D)(3); (12) the inclusion of the location of curbing as required by Article V, Section 1(D)(4); (13) the inclusion of the developer's signature and certification of ownership as required by Article V, Section 1(E)(1); and, (14) the inclusion of an engineer's certification as required by Article V, Section 1(E)(2).

[4] We note that the revised plan went well beyond the scope of these comments.

27, 1976. *DePaul Realty.* And, like the applicant in *DePaul Realty,* they could also have opted to stand by their original plan. We believe, therefore, that the Township's August 12, 1976 denial of the appellants' plan was timely.

We must next determine whether or not the instant situation was a "clear case" in which a motion to take off a non-suit should have been denied. Generally, a non-suit is proper only if the fact-finder, after viewing the evidence (and all reasonable inferences incidental thereto) in the light most favorable to the complainant, could not reasonably conclude that the elements of a cause of action have been established. *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977); *see Tolbert v. Gillette,* 438 Pa. 63, 260 A.2d 463 (1970). To make such an examination requires us first to determine whether or not the Township's denial of the appellants' revised plan was justified on the basis that it was not in compliance with the . Township's land development ordinances and regulations. And our careful scrutiny of the record indicates that the court below was correct in finding that the appellants' original and revised plan still did not comply with a number[5] of subdivision regulations.

---

[5] Specifically: appellants' plan as revised failed to comply with: (1) Article III, Section 3(D), which requires a proposed subdivision to be coordinated with neighboring areas and that proposed street patterns complement existing or paper streets on the current Township map; (2) Article III, Sections 4(A) and 4(A)(3) which requires streets to be arranged in relation to existing and planned street connections into and from adjacent areas; (3) Article III, Section 9(M) which requires permanent reference monuments to be placed in specified locations; and, (4) Article V, Section 1(D)(6), which requires the notation as to all land and streets to be dedicated to the Township. Of course, it is axiomatic that subdivisions which do not comply with valid zoning regulations cannot be approved. We also note that the appellants do not argue, in their brief, that their revised plan was in total compliance with the regulations.

Inasmuch, therefore, as the court below did not commit any errors of law or abuse its discretion, we believe that it could have reasonably concluded that the appellants failed to establish the elements of a cause of action in this matter. The motion to remove non-suit was therefore properly denied.

We will, therefore, affirm the order of the court below.

### ORDER

AND, Now, this 2nd day of March, 1982, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.

Judge Palladino did not participate in the decision in this case.