550 A.2d 1033

Township of Plymouth, Appellant *v.* County of Montgomery, Appellee.

Argued September 13, 1988, before Judges CRAIG, BARRY and McGINLEY, sitting as a panel of three.

*Arthur Lefkoe*, with him, *Deborah G. DeLauro, Wisler, Pearlstine, Talone, Craig and Garrity*, for appellant.

*Bruce W. Kauffman*, with him, *Sheryl L. Auerbach* and *James J. Greenfield, Dilworth, Paxson, Kalish & Kauffman;* Of Counsel: *Frederic M. Wentz* and *Bruce J. Eckel*, for appellee.

OPINION BY JUDGE CRAIG, November 25, 1988:
*Plymouth Township v. Montgomery County*, 109 Pa. Commonwealth Ct. 200, 531 A.2d 49 (1987), states the

facts which constitute the underlying history of this case and also contains judicial determinations and conclusions which affect many of the issues involved in this litigation sequel.

The county, in accordance with a countywide waste management plan, has sought to construct a 1200-ton-per-day resource recovery facility, a trash-to-steam refuse disposal plant in the industrial area of Plymouth Township. The previous litigation ensued after the township repealed the zoning amendment that it had adopted consistent with the plant development and sought to interpose new zoning amendments negating the project.

At that time, the township initiated simultaneous declaratory judgment and equity actions against the county, seeking a declaration that the county's proposed plant would violate township ordinances and an injunction against the county. The county, by counterclaim, sought to invalidate the prohibitory ordinances and enjoin the township from blocking the plant development. Judge BUCHER, as a senior judge assigned to the Court of Common Pleas of Montgomery County, decided against the township, ruling that all of the questioned ordinances were unenforceable with respect to the proposed plant and enjoining the township from taking any action against the plant other than as a party to proceedings within the jurisdiction of the Pennsylvania Department of Environmental Resources.

On appeal, this court decided as follows:

1. In the equity action, this court affirmed the injunction against the township, except with respect to the township's lawful application of Ordinance No. 837, the Subdivision and Land Development Ordinance, and except as to sections of the township's code of ordinances relating to routine building construction approvals.

2. That order of this court relating to the injunction implemented our conclusion that the proper approach for relief is one which

calls upon the trial court to bar township interference with the development and operation of the resource recovery facility on the planned site . . . but with the recognition that the township . . . may apply its established subdivision and land development regulations, and sewer connection requirements, with respect to the physical relationship of the county's site as to the roads, sewers and other land outside it.

3. In the declaratory judgment case, we affirmed the trial court's determinations that the township's zoning amendments and solid waste management ordinance were invalid, and we confirmed that the state's solid waste laws have preempted the township's power to regulate the transportation, processing and disposal of waste but not "lawful zoning concerning the location of plants and buildings for such purposes."

After the entry of this court's order in September of 1987 and denial of the township's petition for reargument, the county and its contractor proceeded, in the latter part of 1987 and the first two months of 1988, to apply for the township's approval under its subdivision and Land Development Ordinance, which remained applicable according to our decision.

After proceedings in the township on that matter—which we list in more detail below—the township council, on February 9, 1988, denied the county's land development application. The county filed with the Common Pleas Court of Montgomery County a statutory appeal of that denial and a motion to enforce our September 1987 order. After receiving additional testimony, Judge BUCHER sustained the county's appeal from the land development application denial and granted

the county's motion to enforce our order. The trial court also directed the issuance of all permits pursuant to construction plans, ruled that further zoning proceedings were not required, and retained jurisdiction for implementation.

The township's appeal to this court pursues six questions, which this opinion will define and resolve, each in its turn.

## THE QUESTION OF FURTHER ZONING PROCEEDINGS

The township here pursues a question of zoning law not expressly pursued in the previous case, based upon the township's assumption that judicial invalidation of the township's obstructive zoning ordinance amendments, together with the township's express repeal of the earlier amendment which would have allowed the project, have now left in effect the antecedent zoning classification applicable to the county's land. That earlier Heavy Industrial Zoning District classification required a special exception to build a refuse disposal plant, and, according to the township, imposed a 200-foot maximum height limit which negates the county's erection of a resource recovery plant's stack of greater height unless the county seeks and obtains a height variance.

Therefore, the township poses the issue:

Did the trial court err in ruling that the applicant was not required to comply with the township zoning ordinance provisions requiring a special exception for the proposed use and placing a limit upon stack height?

Under the law of the case applicable here, no questions of zoning compliance remain. The previous injunction of the trial court enjoined the township from taking any action against the county's project other than under the environmental laws administered by DER. This court modified that injunction only to the extent of

allowing township subdivision and land development regulations and building construction regulations to apply. Examination of the trial court injunction, as affirmed with some modification by this court, makes that point clear.

The only broader language appeared in our modification of the trial court's declaratory judgment decision. There, recognizing that a declaratory judgment with respect to the enforceability of local ordinances must necessarily speak in more general terms, this court resolved the preemption question by affirming that state law had preempted the transportation, processing and disposal of waste, but had not negated township zoning powers with respect to the location of plants and buildings for solid waste uses. The general terms of the declaratory judgment do not broaden the case-specific injunction here which treated all zoning questions as resolved and left only land development and building construction regulations for further compliance proceedings.

The finality of that injunction means that the township cannot open an alternative zoning claim, particularly when it could have pursued that alternative claim in the equity case. By seeking an injunction against the county on the basis of the township's zoning regulations, the township necessarily caused that litigation to constitute a vehicle for any and all zoning issues. With respect to the county's counterclaim to enjoin the township from applying its zoning laws to thwart the county, the township could have raised the alternative contention it now presents—namely that, even without the restrictive new amendments, the underlying zoning classification should nullify the injunction. In accordance with well understood principles of res judicata, the final judgment enjoining the township in the previous case is conclusive not only as to those zoning matters which were liti-

gated, but also as to those zoning claims which could have been litigated. *See Township of Ohio v. Builders Enterprises, Inc.,* 2 Pa. Commonwealth Ct. 39, 276 A.2d 556 (1971), *aff'd,* 446 Pa. 319, 284 A.2d 686 (1971). The ultimate issues, as to zoning law barriers against this selfsame project, could have been decided in the previous proceeding, where the present parties had an opportunity to assert all their claims on that score. *Cf. Callery v. Blythe Township Municipal Authority,* 432 Pa. 307, 243 A.2d 385 (1968).

## LAND DEVELOPMENT REGULATION COMPLIANCE

The township's remaining questions relate to compliance with the township's land development regulations, a matter which the parties necessarily had to pursue after the previous decision by this court.

A chronology, drawn from the extensive findings of fact of the trial court in this case, will be helpful. Those findings indicate the following sequence of events after our previous order in September of 1987:

### 1987

September 16: The county's contractor requested a meeting with the township to discuss the land development application.

October 13: Township officials and the county contractor met for discussion.

December 15: The county's contractor asked the township engineer to discuss a proposed application; the township engineer stated that he was not available and advised that, to be considered at the January 7, 1988 meeting of the township planning agency, the application would have to be submitted before noon of December 24, 1987.

December 23: The county's contractor filed an application with covering letter, drawings, a traffic analysis,

fees and court decision copies; the township distributed the application elements to its planning agency, the county planning commission, the township municipal authority, the township's code enforcement officer, its manager and its solicitor.

December 30: The county filed a status report with the trial court, at the suggestion of the trial judge.

## 1988

January 5: The county's contractor submitted supplemental information to the township engineer, consisting of engineering calculations and a composite site utility plan; the engineer distributed those documents to the same persons and agencies.

January 6: After a telephone conference between the parties, the trial judge entered an order directing the township to complete its consideration of the county's land development application by February 9, 1988; the township appealed that order to this court and requested a stay of the trial judge's January 6 order, which the trial court, this court and the Supreme Court denied; the township thereafter withdrew its appeal of the January 6 order.

January 7: The county and its contractor met with the township planning commission and requested expedited review of the land development application.

January 27: The township engineer declined to meet with the applicants, noting that he had not begun his review of the application but stating that he would provide a memorandum of any deficiencies.

February 2: The township engineer began and completed his review of the land development application; on that date, the township notified the applicants that they could make a presentation to the township council on February 9.

February 4: The township planning commission considered the land development application and voted to recommend rejection of it on grounds relating to clarity of the plans as to setbacks, the addressing of intersection and traffic matters, the need to confirm stormwater calculations, and the absence of an identification map.

February 5: The county requested that the township consider the data on traffic impact, erosion and sedimentation and subsurface conditions which had been submitted to the Environmental Hearing Board earlier in proceedings to which the township was a party.

February 6: The township engineer's memorandum of deficiencies was made available to township officials.

February 8: That memorandum of the township engineer was made available to the county.

February 9: The county provided new materials responding to the alleged deficiencies cited by the township engineer, and, on that date, the county and its contractor met with the township council at a public meeting; at that meeting the township council declined to consider the county's February 9 information, submitted in response to the township engineer's memorandum, and unanimously voted to reject the land development application for 13 listed reasons.

After the county filed, in the trial court, the present statutory appeal and its motion to compel enforcement of the orders granting relief, the township raised, and also pursues here, three issues essentially procedural in their nature and two of substantive import.

### Procedural Issues
### The Expediting Order

The township questions the power of the trial court to issue its order of January 6, 1988 directing the township to act on the land development application by February 9.

On that score, the township points out that section 508 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10508, allows governing bodies a period of ninety days, from the regular meeting date following the application of filing, for considering and approving or rejecting applications for subdivisions or land developments.

In addition, the township claims that its then-pending petition, for allocatur to the Pennsylvania Supreme Court, had the effect of depriving the common pleas court of jurisdiction to act under Pa. R.C.P. No. 1701.

Further, the township claims that the trial court's expediting order was a mandatory injunction, issued without the prerequisites necessary for such a sanction.

However, this court agrees with the county that propriety of that January 6 order of the trial court is no longer open to question. After failing to obtain a stay of that order from the trial court, this court or the Supreme Court, the township appealed that order and then, on March 31, 1988, withdrew its appeal. In accordance with the township's position that the expediting order legally constituted an injunction, we agreed that it was an appealable order at the point at which the township appealed it. Pa. R.A.P. 311(a)(4). The township's discontinuance of that appeal exhausted its opportunity to complain about it.

Moreover, we note that the township, despite some delay in embarking upon consideration of the application, did accomplish full consideration before its planning agency and its council by the specified date, February 9.

Submission of Supplementary Application Materials

As noted in the chronology above, after the county submitted its basic application on December 23, 1987,

its contractor submitted supplemental information, consisting of engineering calculations and plans of site utilities on or about January 5, 1988. The township apparently does not object to that supporting data.

However, the township has objected to the trial court's consideration of the county's submission on February 9, 1988 (the date of the township's vote) of additional plans and additional stormwater drainage calculations to support the application. Also, after the township had denied the application and the county had appealed to the trial court, the county requested permission to submit additional material. The trial court accepted and considered that additional material. Relying upon *DePaul Realty v. Borough of Quakertown,* 15 Pa. Commonwealth Ct. 16, 324 A.2d 832 (1974), the township contends that, as in that case, the revised plans created substantial changes in the application warranting an extension of the statutory time limit for acceptance or rejection. The township characterized the new material as involving drainage easements, utility easements and ground surface profiles, contending that new material of that sort constitutes substantial revisions as held in *Wiggs v. Northampton County Hanover Township Board of Supervisors,* 65 Pa. Commonwealth Ct. 112, 441 A.2d 1361 (1982).

The trial court here correctly regarded the February and March materials as constituting supporting data and supplementary detail, rather than as a substantial revision of the basic elements of the refuse disposal plant project. In the *Wiggs* case, although added drainage easement information and utility easement information was involved, the plan also rotated lots and inserted new factors on the width of road paving, along with the elimination of certain accesses, thus making basic changes in the project outline; the additions here did not change the essential proposal.

Logical support for the trial court's acceptance of the supplementary evidence rests upon the fact that, as a consequence, the number of land development regulation violations, as claimed against the county by the township, was reduced from thirteen down to three.

The core of the project is the refuse disposal plant itself. Additional data on peripheral, albeit important, matters such as stormwater drainage, did not constitute a revision of the basic application. The record shows that the supplementary material embraced a relatively small proportion of all of the elements of the application. The record therefore provides substantial evidence support for the trial judge's essentially factual determination on this point. Such additional information and refinements did not cause the application to become a new one.

## Applicant's Right to be Heard on the Application

The township objects to the trial judge's negative evaluation of the township's receptiveness on February 9, in connection with the township council's final consideration of the application for the purpose of approval or rejection. The trial court's Conclusion of Law 19 is that the township wrongfully denied the county a right to be heard upon its application when it refused to permit response to the township engineer's objections, refused to permit cross-examination of the township engineer and refused to consider material submitted by the applicants on that occasion.

The township contends that the statutory provision, in MPC §508(5), allowing an advertised hearing on subdivision matters, means that conduct of a due process hearing is optional with the municipality, noting that MPC §508 also counts the time period for decision from the date of a "meeting."

Characterization of the township's consideration of the application as a "meeting" or as a "hearing" is not

the significant aspect. The matter which is significant, and with which the trial judge was concerned, was whether the township gave fair consideration to the application following the previous disposition of the case by this court, or was unlawfully obstructive in the manner condemned by this court in *Raum v. Tredyffrin Township Board of Supervisors,* 29 Pa. Commonwealth Ct. 9, 370 A.2d 777 (1977).

Because there is no dispute concerning the constraints which the township imposed at that time, the record also supports the trial judge's conclusion on this point.

### Substantive Issues
### Title to Portion of Land Covered by the Application

Because of an error on the application plan with regard to a boundary line on the eastern side of the tract, a small portion of the land included in the site of the proposed resource recovery facility was not held by the county or by its contractor. This issue can be viewed as an issue of partial standing or as a question of compliance with the land development regulations. The trial judge regarded this portion of the tract as de minimis and, recognizing that the county could obtain it through the power of eminent domain, the trial judge declined to consider it as determinative. Furthermore, the trial judge correctly noted that the township had not pointed to this de minimis title matter as a reason for rejecting the application, failing to raise it until the matter was in court.

The township mischaracterizes the issue as a jurisdictional one. Although, as noted, it can be characterized as involving a question of standing in part, there is no issue concerning the jurisdiction, either of the township or of the court, over this matter so as to permit the

point to be raised at any time without regard to timeliness.

Moreover, as the county points out, the county had declared, in the application's covering letter in December of 1987, that the county is in the process of acquiring any land not presently owned, so that the township's failure to raise any objection, until the matter reached the court, amounted to a waiver of the de minimis title omission.

### Compliance with Land Development Ordinance Requirements

Although the township's rejection letter to the county's contractor, dated February 10, 1988, enumerated thirteen respects in which, according to the township, the plans failed to comply with the subdivision and land development ordinance, the trial court found and the township acknowledges that the county's submissions of February 9 and March 9 corrected all but three of those deficiencies.

The township has identified those deficiencies as follows:

(1) Concentration of storm drainage without a proper outlet in violation of section 505.2c of the ordinance;

(2) Failure to indicate acquisition of easements for storm or surface water drainage over lands outside of the county's land, in violation of section 507.4c of the ordinance; and

(3) Failure to show outfall swales and easements for stormwater drainage across the property of others to Plymouth Creek, in violation of the same section 507.4c,

With respect to these three alleged remaining deficiencies, the trial judge comprehensively made Findings of Fact Nos. 70-86, summarized as follows.

All three deficiencies relate to the proposed storm-water management system (FF 70). That system consists of a sewer system in the plant area, swales gathering stormwater at the site perimeters and a detention pond or basin, plus a stilling pond at the southwestern corner of the site (FF 71).

The trial judge found that the plant drainage system, as adequately designed for a 25-year storm (FF 72), consisted of facilities to convey drainage from the plant to the southwestern corner of the site (FF 73).

The detention pond, at that corner, is oversized (FF 74); it has a pipe spillway to discharge water by gravity to a rock-lined stilling basin (FF 75). There is also an emergency spillway, consisting of a sill and channel designed to discharge storms greater than 50-year storms into the stilling basin (FF 76).

The stilling basin dissipates discharges from the pond and discharges the water in a sheet flow at the property line (FF 77). Engineering calculations confirm the propriety of the design (FF 78).

After development, the rate of discharge of storm or surface water from the property will not increase, and it will be controlled (FF 79). The stormwater management system is adequate to control stormwater runoff properly from the site (FF 80). It meets the township's requirement that post-development runoff during a 50-year storm may not exceed runoff generated by a 10-year pre-development storm (FF 81). Under pre-construction conditions, stormwater follows the natural contours of the land and flows off in different directions, sometimes causing flooding to the south along Alan Wood Road (FF 83). After development, stormwater will not be discharged across that road to Plymouth Creek (FF 84). Discharge northward to Alan Wood Road will be in a controlled manner by means of detention pond (FF 85).

Accordingly, the stormwater management system will have no foreseeable detrimental effect upon downstream property (FF 86); the proposed stormwater management system fully complies with the ordinance requirements (FF 82).

With respect to this aspect of compliance, the sole question is whether the record contains substantial evidence support for the findings of fact stated above.

The township contends that the trial judge abused his discretion by adopting the opinions of county witnesses in preference to contrary opinions from township witnesses. However, the trial judge, as the finder of fact, had the power to make the necessary credibility determinations and adopt one or the other of conflicting sets of opinions.

To bolster its claim of ordinance noncompliance, the township cites *Rau v. Wilden Acres, Inc.*, 376 Pa. 493, 103 A.2d 422 (1954), for the well accepted common law proposition, with respect to surface water, that a landowner may not alter the natural flow of surface water by concentrating it at an artificial discharge point, *i.e.*, a landowner may not by artificial means gather surface water into a body and precipitate it upon neighboring property. The township viewed the testimony as indicating that the surface water, which normally now leaves the county tract all along 1100 feet of frontage, would be altered so that is would discharge through a single pipe onto neighboring land.

However, the physical picture presented by the evidence, as evaluated by the opinions of county expert witnesses deemed credible by the trial judge, indicates that the purpose of the oversized detention pond is to gather stormwater within the boundaries of the county property and feed it through a pipe to a stilling pond on the county property, rather than directly onto neighboring property, so that, from the stilling pond, stormwater

would continue to be discharged gradually in sheet flow at the property line. Study of the voluminous record does not confirm the contention in the township's brief that discharge from the county property to neighboring property would, at that point, be concentrated in the flow of a single pipe. The trial judge's findings, to the effect that post-development outflow will be not substantially different than the pre-development flow, rests upon recognition of the fact of existence of the stilling pond in conjunction with, and downstream of, the detention pond. Moreover, the township engineer admitted that the system's design satisfies the requirement that the discharge of stormwater during a 50-year post-construction storm will be no greater than the discharge during a 10-year pre-construction storm (R. 347a), thus providing substantial evidentiary support for the trial judge's finding to that effect.

In view of the substantiated findings that stormwater outflow, after construction, will not differ substantially from the surface water runoff pattern before construction, the requirement for obtaining easements from other property owners is not applicable, as it would be if the post-construction flow were to be concentrated so as to create, in effect, watercourses or their equivalent, whether intermittent or continuous.

As noted above, the township does not pursue its claim of ten additional deficiencies as matters of substance, relying only upon its claim that the county submitted plan changes, sufficient to satisfy those deficiencies, too late in the process. Moreover, the trial judge, by Findings of Fact Nos. 87a-87i, disposed of those nonsubstantive matters by meticulously pointing out how the revised plans had cleared up the points raised by the township's objections.

Therefore, the trial judge's finding that the application met all applicable requirements of the ordinance

(FF 88) was sound as a matter of fact and, as confirmed in Conclusions of Law Nos. 7-12.

## Conclusion

This court notes the remarkably comprehensive, thorough and detailed quality of the trial judge's adjudication, fully annotated by hundreds of references to specific evidence in the record.

Particularly in view of record evidence that the township had departed from its normal review process (FF 89-94), the trial judge found that the township had treated this application of the county in an arbitrary and capricious manner (FF 95), rejecting it for reasons unrelated to its technical merits (FF 96). The trial judge pinpointed evidence of the township's bias against the proposal (FF 97) and its obdurate conduct in obstructing the proposed county facility (FF 98-100).

Significantly, the trial judge concluded by stating:

> The time has come, if it has not long since passed, for the Township to cease its foot-dragging, nit-picking, and logic-chopping. If the county is not granted prompt and comprehensive relief, its string of legal victories in this prolonged litigation will be indistinguishable from defeat.

Accordingly, for the reasons stated in the foregoing review by this court, the trial court's order will be affirmed.

## ORDER

NOW, November 25, 1988, the order of the Court of Common Pleas of Montgomery County, dated June 17, 1988, at Nos. 85-19292, 85-19293 and 88-02524, are affirmed.

Judge MACPHAIL did not participate in the decision in this case.