574 A.2d 721

**T.R.A.S.H., LTD. and Plymouth Township, Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1990.

Decided April 20, 1990.

654

Anthony J. Mazullo, Jr., with him, Herbert F. Rubenstein, Broad Axe, for petitioner, Plymouth Tp.

Jerome Balter, Philadelphia, Public Interest Law Center of Philadelphia, for petitioner, T.R.A.S.H. Ltd.

J. Robert Stoltzfus, Asst. Counsel, for respondent, Dept. of Environmental Resources.

Ronald S. Cusano, with him, George Basara, Polito & Smock, P.C., Pittsburgh, of counsel, Lois Reznick and Abbi Cohen, Dechert, Price & Rhoads, Philadelphia, for respondent, Dravo Energy Resources of Montgomery County, Inc.

Sheryl L. Auerbach, with her, Bruce W. Kauffman, Michael L. Krancer, and Richard E. Stabinski, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, for respondent, County of Montgomery.

Before CRAIG and COLINS, JJ., and SILVESTRI, Senior Judge.

CRAIG, Judge.

Plymouth Township and The Residents Against Solid Waste Hazards (TRASH) appeal an order of the Environmental Hearing Board (EHB) affirming a decision by the Department of Environmental Resources (DER) to issue a solid waste permit and an air quality plan approval (plan approval) to Dravo Energy Resources of Montgomery County, Inc. (Dravo) for the purpose of constructing a municipal waste incinerator in Plymouth Township.

On July 23, 1987, DER issued the above permit and plan approval along with a National Pollutant Discharge Elimination System permit which is not a subject of this appeal. Plymouth Township and TRASH (petitioners) filed timely appeals with the EHB, naming Dravo and DER as respondents. The County of Montgomery filed a petition to intervene in support of the permit and approval, which the EHB granted.

The EHB conducted fifteen hearings on the merits in November and December, 1987. On April 28, 1989, the EHB issued an adjudication affirming DER's issuance of the permit and plan approval and dismissing the petitioners' appeal. TRASH then filed an application for reargument, which the EHB denied. The petitioners now jointly appeal the EHB's order to this court.[1]

The petitioners broadly contend (1) that DER misconstrued the "best available technology" standard contained in the plan approval requirements and (2) that DER abused its discretion in issuing the plan approval and solid waste permit for Dravo's proposed incinerator.

■ Our scope of review of EHB decisions is limited to determining whether the EHB committed any errors of law, constitutional violations, or whether any necessary findings of fact are unsupported by substantial evidence. Additionally, the EHB, as factfinder, makes all determinations concerning witness credibility and evidentiary weight. *Pennsylvania Game Commission v. Department of Environmental Resources*, 97 Pa. Commonwealth Ct. 78, 509 A.2d 877 (1986).

1. This court has previously upheld the construction of the waste facility when challenged by Plymouth Township on the ground of alleged zoning and township ordinance violations. *Township of Plymouth v. County of Montgomery*, 109 Pa. Commonwealth Ct. 200, 531 A.2d 49 (1987), *appeal denied*, 520 Pa. 622, 554 A.2d 513 (1988), U.S. cert. denied, —— U.S. ——, 109 S.Ct. 1748, 104 L.Ed. 2d 184 (1989); *Township of Plymouth v. County of Montgomery*, 121 Pa. Commonwealth Ct. 303, 550 A.2d 1033 (1988); and *Township of Plymouth v. County of Montgomery*, (No. 1754 C.D.1988, filed September 22, 1988).

## 1. Best Available Technology

Under 25 Pa.Code § 127.12(a)(5), an application for an air contamination source must show, in relevant part, that "the emissions from a new source will be the minimum attainable through the use of the best available technology." The applicable definition of best available technology (BAT) was "[e]quipment, devices, methods or techniques which will prevent, reduce or control emissions of air contaminants to the maximum degree possible and which are available or may be available." 25 Pa.Code § 121.1.[2]

In connection with administering the regulation, DER drafted and published the BAT Criteria for Municipal Waste Incineration Resource Recovery Facilities (BAT Guidance), an internal operations document designed to establish the minimum criteria which an applicant for a municipal waste incinerator must meet.

The BAT Guidance further provides that "BAT will serve as a baseline for determining Best Available Control Technology (BACT) for Prevention of Significant Deterioration (PSD) requirements (refer to 25 Pa.Code 127.83), i.e., BACT shall be at least as stringent as BAT." Title 25 Pa.Code § 127.83 refers to the adoption and incorporation of the PSD requirements listed in the federal Clean Air Act, 42 U.S.C. §§ 7470–7491, which defines BACT as

> an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this Act emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economy impacts and other costs, determines is achievable for such facility through application of production processes and available methods, systems, and techniques .... 42 U.S.C. § 7479(3).

2. On March 18, 1989, the definition of BAT was amended to specify that the equipment, devices, methods or techniques are "as determined by the Department...."

DER applied the BAT Guidance in issuing Dravo's plan approval, and the EHB made the following relevant findings of fact in affirming DER's decision:

284. The Department determines BAT on a case-by-case basis, considering, *inter alia,* the type of equipment and other control technologies proposed by the applicant, the facility's location, and the source and character of the waste stream. (N.T. 1012)

285. In reviewing the Dravo plan approval application and writing the plan approval, the Norristown Regional Office of the Bureau of Air Quality Control relied upon and applied the criteria set forth in the BAT Guidance and the draft revised BAT Guidance. (N.T. 1395–1396, 1546)

286. The Department concluded that the Dravo facility was designed in conformance with the BAT Guidance. (Ex. M–43)

287. Dravo's combustion technology and air pollution control equipment represent BAT for control of air emissions from municipal waste incinerators. (N.T. 1766; Ex. M–43)

The petitioners contend that DER "misconstrued" the BAT requirement and approved Dravo's use of equipment that does not conform to the requirements by (a) taking into consideration the federal BACT criteria of energy, environmental and economic impacts and other costs, and (b) not requiring Dravo to include the lowest achievable emission rate in the plan approval application.

a.

█ The first issue is whether DER committed an error of law by incorporating the BACT criteria into the BAT Guidance document, which the DER used in evaluating Dravo's application.

█ Our standard of reviewing the validity of an administrative agency's interpretation of its own regulations is that the agency's interpretation is given controlling weight unless it is plainly erroneous or inconsistent with the regula-

tion. *Wiley House v. Scanlon,* 502 Pa. 228, 465 A.2d 995 (1983).

The definition of BAT in 25 Pa.Code § 121.1 does not expressly take into account energy, environmental and economic impacts and other costs. However, 25 Pa.Code § 127.83 provides for the adoption and incorporation of the PSD requirements of the federal Clean Air Act. Furthermore, § 127.83 states that "[t]he adoption of [the PSD, i.e., BACT] requirements *supplements* the requirements of this chapter and does not supersede or rescind any requirements of the Act or this article." (Emphasis added.)

Because DER's interpretation of its regulations carries controlling weight and because § 127.83 authorizes the supplementing of the BAT definition by the PSD's BACT definition, DER did not commit an error of law in considering the definition of BACT when drafting the BAT Guidance document.

b.

■ The second issue is whether technology which controls emissions of air contaminants to the maximum degree possible is synonymous with controlling emissions to the lowest achievable emission rate (LAER), defined in relevant part as "[t]he most stringent emission limitation which is achieved in practice by such class or category of source." 42 U.S.C. § 7501(3), 25 Pa.Code § 121.1.

The petitioners contend that "DER defines BAT by means of emission limits and therefore there is no meaningful difference between BAT and LAER," as indicated by the BAT Guidance which allegedly "consists solely of emission limits and ... not a single bit of guidance regarding technology." The petitioners then conclude that the lowest achievable emission rates "must be included in the plan approval in order to establish an objective means for determining whether the facility is complying with the regulations."

However, BAT refers to technology and not emission limits. Moreover, LAER is the standard expressly applied

when evaluating an application for an air contamination source in a nonattainment (poor air quality) area, 25 Pa. Code § 127.61, which Plymouth Township is not.

Additionally, the petitioners' assertion that the BAT Guidance consists solely of emission limits is without merit. That document contains not only stack emission limitations, but also operating requirements, air permit requirements, monitoring requirements, test requirements and general application requirements.

Furthermore, because the BAT Guidance is designed to assist DER in evaluating equipment to be used in an air contamination source, the inclusion of some emission limitations which that equipment must be *capable* of achieving is not unreasonable.

Therefore, because Plymouth Township is not located in a nonattainment area, DER did not err in not requiring that Dravo include the lowest achievable emission rate in its plan approval application.

## 2. Air Quality Plan Approval

The petitioners next contend that DER abused its discretion in issuing Dravo's plan approval because (a) DER did not generate any written documents to assist in the development of the BAT Guidance, thereby depriving all reviewing bodies of the opportunity to determine whether DER's decisions were justified; (b) DER's Central Office failed to inform the Norristown Regional Office that it could include heavy metal emission rate limitations in Dravo's plan review; (c) the Norristown Regional Office did not sufficiently review Dravo's application to determine whether emissions would be the minimum attainable through BAT; and (d) a conflict of interest occurred when DER's Norristown Region Chief of Engineering reviewed Dravo's application after accepting employment with an engineering corporation that performed studies on Dravo's application.

a.

As to the production of written documents relating to the BAT Guidance, the EHB concluded that

the Department's reliance on the BAT Guidance in formulating the conditions of Dravo's plan approval was not an abuse of discretion where the guidance was based on extensive literature research, review of the performance of municipal resource recovery facilities, and consultation with other regulators, and subjected to peer and public review. (Conclusion of Law No. 31.)

Substantial evidence throughout the record supports this conclusion. Therefore, DER did not abuse its discretion in using the BAT Guidance.

### b.

The petitioners next argue that DER abused its discretion in issuing Dravo's plan approval because the BAT Guidance does not provide for the inclusion of limits as to heavy metal emission rates and the Norristown Regional Office did not include such rates in issuing Dravo's plan approval, but the Harrisburg Regional Office issued a plan approval, which included limits as to heavy metal emission rates, for the construction of an incinerator in York.

As stated above, DER has adopted a case-by-case analysis of each applicant's proposed BAT. DER's issuance of the York incinerator plan approval is not on appeal before us, and accordingly, we will not address that factual situation.

In the present case, nothing in the regulations mandates that heavy metal emission rate limits be included before DER can issue a plan approval. Moreover, the EHB made the following uncontested findings:

351. The information submitted by Dravo with its plan approval application demonstrates that the heavy metal emissions from the facility will not result in exceedance of the ambient concentration levels in the plan approval. (N.T. 2142–2144; Ex. B–33, B–34, B–35, M–43)

. . . .

354. The Department decided not to include heavy metal emissions limitations in the Dravo plan approval because the existing data base is not sufficient to establish appropriate heavy metal emission limits. (N.T. 1047,

1071, 1073-1076, 1436, 1439, 11544, 1929-1931, 1933-1938, 2156; Egan Dep. at 128-129; Ex. D-7, D-7A)

Therefore, DER did not abuse its discretion in issuing the plan approval without including specific heavy metal emission limitations.

### c.

■ The third plan approval issue is whether the DER's Norristown Regional Office abused its discretion by incorporating BAT Guidance emission limits into the plan approval without considering emission rates achieved by Dravo in its incinerator facilities located in Maine, California and West Germany to determine if emissions at the Plymouth Township location will be the minimum attainable through BAT.

The petitioners assert that the regional office violated the case-by-case analysis by adopting the BAT Guidance emission limits and incorporating them into the plan approval for Dravo.

However, emission limits logically are not factors which fluctuate with each incinerator.

Furthermore, the emission rates of other incinerator facilities outside of Pennsylvania are irrelevant because other states' and countries' standards for permitting the construction of such facilities are not applicable. The regulations which DER must follow are self-explanatory, and comparisons to other facilities are not required or even mentioned.

### d.

■ The final issue concerning the plan approval is whether DER abused its discretion in permitting John Egan, the Regional Chief of Engineering, to summarize the regional office review of Dravo's application after he had made arrangements to go to work for Roy F. Weston, Inc. (Weston), engineering consultants which performed engineering studies submitted to DER with Dravo's application. The petitioners assert that Egan's failure to inform his superior at DER about his upcoming employment arrangements and his review of Dravo's application amount to a

concealment of a conflict of interest because Egan knew that Weston was involved in the preparation of Dravo's application.

The EHB determined that DER did not abuse its discretion because "Mr. Egan did not review the Weston submission, and, therefore, he made no recommendations concerning its adequacy."

The EHB found that Dravo submitted a Toxic Air Risk Assessment (Risk Assessment) prepared by Weston to DER. Finding of Fact No. 196. The EHB further found that Douglas L. Lesher, Chief, Engineering Services Section, Central Office, reviewed the Risk Assessment. Finding of Fact No. 203. The record indicates that Lesher notified the Norristown office by letter that the "Central Office has completed a review of the Toxic Air Risk Assessment submitted as a part of [the application]."

Furthermore, DER has no formal policies regarding contacts of its employees with consulting firms submitting work to DER. Finding of Fact No. 210. Therefore, although Egan's employment situation warranted examination as to a potential conflict of interest, substantial evidence supports the EHB's conclusion that Egan's lack of association with the portion of Dravo's application prepared by Weston does not constitute a conflict of interest.

### 3.  Solid Waste Permit

The petitioners contend that DER abused its discretion in issuing the solid waste permit because Dravo's application did not sufficiently address the danger of subsidence and because Dravo's expert on foundation engineering failed to investigate the intended site of the incinerator adequately.

Dravo indirectly retained Dr. Paul C. Rizzo to evaluate the adequacy of the site and to make recommendations regarding the design and construction of the foundation for the proposed facility. Dr. Rizzo advised Gibbs and Hill, the firm directly retained by Dravo, of all the foundation con-

cepts necessary for the facility. Gibbs and Hill incorporated these concepts into its subsurface report.

The EHB made the following significant findings of fact:

140. The site is suitable from a foundation engineering perspective to support the facility if Dr. Rizzo's foundation design is implemented. (N.T. 725–727, 763)

141. The conditions of the solid waste permit are consistent with Dr. Rizzo's November, 1985, recommendations. (N.T. 754, 762, 773)

. . . .

146. Dr. Rizzo was the only witness qualified as an expert in these proceedings who has experience with the design of resource recovery facilities over foundations underlain by limestone, and he is currently advising designers and builders on two other such projects. (N.T. 307, 404, 682–683)

Although the record indicates that Dr. Rizzo only visited the actual site on one occasion,[3] the EHB found that:

146. Dr. Rizzo was the only witness qualified as an expert in these proceedings who has experience with the design of resource recovery facilities over foundations underlain by limestone, and he is currently advising designers and builders on two other such projects. (N.T. 307, 404, 682–683)

147. Dr. Rizzo was the only witness qualified as an expert in these proceedings who has experience with the design of foundational support systems for large industrial structures over foundations underlain by limestone. (N.T. 307, 404, 682–683)

148. Dr. Rizzo is eminently well-qualified as an expert in the area of foundation engineering. (N.T. 672–688, 699–700)

Because the EHB makes all determinations concerning credibility and evidentiary weight, this court is in no posi-

3. The EHB incorrectly found that "Dr. Rizzo made extended visits to the site." Finding of Fact No. 97.

tion to question the acceptance of Dr. Rizzo's expert testimony.

Therefore, because the petitioners do not challenge the fact that the conditions of the solid waste permit are consistent with Dr. Rizzo's recommendations, as stipulated in Finding of Fact No. 140, this court has no basis for concluding that DER abused its discretion in issuing the solid waste permit to Dravo.

Although this court is not insensitive to the health concerns of the petitioners,[4] the record leads us to conclude that Dravo has complied with the stringent regulations promulgated by the Pennsylvania legislature and DER.

Accordingly, for the reasons stated above, the decision of the Environmental Hearing Board is affirmed.

ORDER

NOW, April 20, 1990, the order of the Environmental Hearing Board, dated April 28, 1989, at No. 87–352–W, is affirmed.

---

4. As a point of interest, the EHB found that the "maximum cancer risk to individuals from the Dravo facility due to inhalation at the point of maximum exposure ... is estimated to be between 0.43 and 0.55 chances in one million," Finding of Fact No. 363, and that the "risk of a child contracting cancer from eating one peanut butter sandwich per month for fifteen years is approximately five hundred times greater than the risk of contracting cancer as a result of emissions from the Dravo facility." Finding of Fact No. 364.