**BOARD OF SUPERVISORS OF
MIDDLE PAXTON TOWN-
SHIP, Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL
RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.

Decided Nov. 13, 1995.

Richard H. Friedman, for petitioner.

Gina Thomas, Assistant Counsel, for respondent.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Board of Supervisors of Middle Paxton Township (Township) petitions for review of a decision of the Environmental Hearing Board (Board), which dismissed the Township's appeal from the Department of Environmental Resources' (Department) disapproval of an update to the Township's official plan, submitted pursuant to the Pennsylvania Sewage Facilities Act (Act).[1]

The Board's relevant findings of fact are summarized as follows. The Township's first official plan, approved by the Department in 1975, included provisions for the eventual installation of sewers in certain developed areas of the Township and for the conveyance of sewage to a treatment plant in the adjacent Borough of Dauphin (Dauphin). By 1985 this portion of the official plan had not been implemented. On November 20, 1985, the Department notified the Township that Dauphin was upgrading its sewage treatment plant, advised the Township to negotiate for capacity in the upgraded plant, and directed the Township to update its official plan within 120 days. On April 30, 1986, the Department and the Township entered into a Consent Order and Agreement providing, *inter alia,* for the updating and implementation of the official plan and for continuing limitations on the issuance of sewage system permits in the meantime.

In October of 1986, the Township submitted to the Department an official plan update; the 1986 update recognized malfunc-

tions of existing on-site sewage systems and proposed the installation of sewers within the next ten years to connect two residential developments, Delwood Acres and Stony Creek Manor, to Dauphin's treatment plan. After discussions with the Department, the Township submitted a second official plan update. The Department determined that both updates were unacceptable because they did not address, to the Department's satisfaction, the need for sewers in the developed areas of the Township.

The Township then retained a technical consultant to perform water sampling and other studies to determine whether sewers were, in fact, needed in these areas. The Township also directed its sewage enforcement officers to study subsurface sewage disposal repairs in two residential developments to determine the effectiveness of the repairs. Using the results of these studies, the Township submitted to the Department a third official plan update on August 26, 1988. This plan update reflected the Township's position that a sewer system would not be needed within the next ten years and that the Township's sewage disposal needs could be met adequately by on-site systems.

After reviewing the Township's third official plan update and after performing its own soil and water investigations, the Department, by letter dated December 8, 1988, scheduled a meeting with the Township for December 21, 1988. The letter included the following statements:

> Please note that information available to the Department indicates that there is a serious health hazard present. Citizens should be advised to avoid contact with groundwater seeps and water in ditches and small streams close to developed areas especially Stoney [sic] Creek Manor. Owners of wells in developed areas should consider bacterial treatment of drinking water until the township resolves problems with ongoing groundwater contamination.

(Exhibit C–18G.)

At the meeting on December 21, 1988, the Department made it clear to the Township

---

1. Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§ 750.1–750.20a. Section 5 of the Act requires every municipality to submit to the Department an official plan for sewage services for areas within its jurisdiction as well as revisions to the plan as may be required by the Department.

that the third update would not be approved, and the Township requested to review the Department's sampling data. On December 30, 1988, the Department sent a letter to the Township stating as follows:

> As a result of the meeting held on December 21, 1988, Middle Paxton Township has requested that all information gathered by the Department be turned over to the Township. Therefore, the Department of Environmental Resources is requiring a sixty (60) day extension to the review time for the above referenced Official Act 537 Plan, as per Chapter 71, Section 71.16 [25 Pa.Code § 71.16].

(Exhibit C–18H.)

On January 9, 1989, the Township sent a letter to the Department stating that the Township did not wish to reconsider the plan update. The letter also expressed the Township's belief that the Department's claim to an extension of the review period was untimely. On February 24, 1989, the Department formally disapproved the third official plan update, concluding that the plan failed to address the existing and long term sewage disposal needs of the Township.

The Township appealed to the Board, arguing, *inter alia*, that the Department's disapproval was untimely, having been issued well after the 120–day period set forth at 25 Pa.Code § 71.16, and that the plan update must, therefore, be deemed approved.

As it existed on February 24, 1989, the date of the Department's disapproval, 25 Pa. Code §§ 71.16(c) and (d) read as follows:[2]

> (c) Within 120 days after submission of the official plan or revision, the Department shall either approve or disapprove the plan or revision.
>
> (d) Upon the Department's failure to approve an official plan within 120 days of its submission, the official plan shall be deemed to have been approved, unless the Department informs the municipality that an extension of time is necessary to complete the review.

The Board acknowledged that, under the provisions set forth at 25 Pa.Code § 71.16, the Department was required to approve or disapprove the third plan update, or to inform the Township that an extension of time was necessary, no later than December 27, 1988.[3] The Board also recognized that the Department's letter of December 30, 1988, informing the Township that an extension was required, was sent three days after the review period expired. However, the Board concluded that the Department's disapproval was timely, reasoning that:

> The stated reason for the extension, as set forth in the December 30, 1988 letter, was the Township's request at the December 21, 1988 meeting to review all of DER's soil and water sampling data. DER had made it clear to the Township at that meeting and in the December 8, 1988 letter ... that it had completed its review of the third Update and would not approve it. On the date of the meeting, there was still adequate time remaining in the 120–day review period to issue a formal disapproval. When the Township asked to review the data, however, it was obvious that the period had to be extended. The Township's request, therefore, effectively waived the 120–day limit.

(Board's decision, p. 27.)

■ On appeal to this Court,[4] the Township again argues that the language of 25 Pa.Code § 71.16 is mandatory and explicitly provides for deemed approval when the Department fails to approve or disapprove a plan within 120 days.

---

**2.** § 71.16 was amended and replaced by § 71.32, effective June 10, 1989.

**3.** As the third update was filed with the Department on August 26, 1988, the 120–day review period would normally have expired on December 24, 1988. Since that day was a Saturday, *followed by* Christmas on Sunday and the official holiday on Monday, the review period did not end until Tuesday, December 27, 1988.

**4.** Our scope of review of a Board decision is limited to determining whether constitutional rights were violated, an error of law was committed, or any findings of fact are unsupported by substantial evidence. *Herzog v. Department of Environmental Resources*, 166 Pa.Cmwlth. 114, 645 A.2d 1381 (1994).

■ In order for the result of deemed approval to occur from the Department's failure to act within a statutorily prescribed time period, there must be explicit language in the statute providing for deemed approval. *Department of Environmental Resources v. Washington County*, 157 Pa.Cmwlth. 1, 629 A.2d 172 (1993), *appeal dismissed as improvidently granted*, 536 Pa. 431, 639 A.2d 1171 (1994). The language of § 71.16 satisfies this requirement.

The Department points out that the purpose of deemed approval provisions is to "remedy indecision and protracted deliberations on the part of local government bodies and to eliminate deliberate or negligent inaction on the part of governing officials." *Morris v. Northampton County Hanover Township Board of Supervisors*, 39 Pa.Cmwlth. 466, 395 A.2d 697, 699 (1978). The Department argues that this purpose would not be effectuated by granting deemed approval here, because its conduct does not evidence indecision or negligent inaction.

■ However, where, as here, the words of a legislative enactment are clear and free from ambiguity, the letter of it may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b);[5] *Borough of Glendon v. Department of Environmental Resources*, 145 Pa.Cmwlth. 238, 603 A.2d 226 (1992), *petition for allowance of appeal denied*, 530 Pa. 657, 608 A.2d 32 (1992). We cannot embark upon a consideration of legislative intent (that is, consider the purpose of the enactment, the circumstances under which it was enacted and the mischief to be remedied) when there is no ambiguity in the applicable legislation. 1 Pa.C.S. § 1921(c); *Borough of Glendon; Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72 (1989).

■ The Board concluded that the Township's request to review the Department's sampling data effectively waived the 120-day limit. The Board relied on *James Craft v. Department of Environmental Resources*, 1990 EHB 1607, and *Crowley v. Department of Environmental Resources*, 1989 EHB 44, and the cases cited in those decisions, but provided no analysis of these decisions to support its conclusion.

In *Craft*, a township submitted a planning module to the Department on December 27, 1988, as part of an official plan revision. The Department responded within 120 days by letter, which notified the township of deficiencies and inconsistencies in the planning module and which specifically stated that the 120-day review period would not begin to run until submission was complete. On April 4, 1989, the township submitted additional documents to the Department. The Department responded by letter within 120 days, informing the township that the initial deficiencies had not been cured and stating again that the review period would not begin to run until the submission was complete. On January 2, 1990, the Department formally disapproved the planning module.

The appellant land-developer in *Craft* argued that an on-site examination made by the Department on August 11, 1989 obviated the need for an additional submission. The appellant maintained that its planning module should be deemed approved because the Department failed to act within 120 days of the site examination. The Board rejected these arguments and concluded that deemed approval must be denied, because the Department had acted in a timely manner on each submission and the parties should have understood that no further action would be required of the Department until the requested information was submitted.

In *Crowley*, the appellants submitted an official plan revision to the Department on November 4, 1986. The Department sent a letter to the appellants on March 10, 1987, informing them that additional documentation of a township decision was needed and that the 120-day review period would not commence until those submissions were made. The appellants asked the Department to defer its decision while it sought to comply

---

5. The rules of interpretation set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, are applicable to provisions of the Code unless specifically provided otherwise by statute or the adopting agency and with the exception of home rule charter documents. 1 Pa. Code § 1.7; 1 Pa.C.S. § 1502(a).

with the Department's demand. The appellants were unsuccessful in obtaining action by the township and the Department formally disapproved the plan on May 2, 1988.

On appeal, the Board in *Crowley* concluded that the Department's communication of May 10, 1987 was not timely and did not toll the running of the 120–day period. However, the Board noted the appellants' efforts to obtain the requested documents, their frequent contact with the Department advising the Department of their efforts, and their request that the Department not issue a formal disapproval in the meantime. The Board concluded that these actions were completely inconsistent with any intent to hold the Department to the precise time limits set forth in the regulations and constituted an after-the-fact waiver of those time limits.

■ In both *Craft* and *Crowley,* the Board reasoned that the relevant provisions of the Code were similar to deemed approval provisions in Sections 508 and 908 of the Municipalities Planning Code (MPC)[6] and relied upon decisions by this Court construing those sections of the MPC. Thus, the Board determined that the deemed approval provisions at 25 Pa.Code § 71.16 can be waived by a party's acquiescence to the Department's demand for additional information, *Craft,* or by a party's request that the Department defer its decision, *Crowley.*[7]

In this case, the record reflects that, at the December 21, 1988 meeting, the Department communicated its intent to disapprove the Township's plan update and the Township only asked to review the Department's data. There is no evidence, nor is there any allegation, that the Township communicated an intent to do any more than review this information.

The Department does not contend that the Township's filing was incomplete, that the Township filed a revision, was tardy in complying with a Department request, or that the Township asked the Department to delay its decision. Moreover, the Township did not communicate to the Department that it intended to submit a revision. Under any of those circumstances, the Township would be estopped from asserting the remedy of deemed approval because its own conduct would have caused the delay. The Department does not argue that it was *unable* to approve or disapprove the plan update because of the Township's request. The facts are insufficient to establish a causal connection between the Township's request to review the Department's data and the Department's failure to comply with the provisions of 25 Pa.Code § 71.16.

■ We hold that waiver of the deemed approval provisions expressly set forth in the mandatory language of 25 Pa.Code § 71.16 will occur only where the words or conduct of the party seeking this remedy has caused or substantially contributed to the Department's delay. As the Township's request did not impair the Department's ability to respond in a timely fashion, the Board erred in concluding that the Township's request constituted a waiver of deemed approval.

Accordingly, we reverse the decision of the Board.

### ORDER

NOW, November 13, 1995, the order of the Pennsylvania Environmental Hearing Board,

---

6. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10508 and 10908.

7. The Commonwealth Court cases cited by the Board in *Craft* and *Crowley* are relied upon by the Department in this appeal. In these decisions, our Court held that a party may waive the time limits in the MPC expressly by words, *Brauns v. Borough of Swarthmore,* 4 Pa.Cmwlth. 627, 288 A.2d 830 (1972), or impliedly by conduct. Conduct constituting a waiver of these provisions includes a massive failure to comply with filing requirements, *Gorton v. Silver Lake Township,* 90 Pa.Cmwlth. 63, 494 A.2d 26 (1985),

the filing of revisions, *Wiggs v. Northampton County Hanover Township Board of Supervisors,* 65 Pa.Cmwlth. 112, 441 A.2d 1361 (1982); *Morris; DePaul Realty Co. v. Borough of Quakertown,* 15 Pa.Cmwlth. 16, 324 A.2d 832 (1974), the tardy submission of data; *Swedeland Road Corp. v. Zoning Hearing Board of Upper Merion Township,* 107 Pa.Cmwlth. 611, 528 A.2d 1064 (1987), *petition for allowance of appeal denied,* 518 Pa. 621, 541 A.2d 748 (1988), and proceeding on the merits of the case after the time limits had run, *In re Appeal of Grace Building Co., Inc.,* 39 Pa. Cmwlth. 552, 395 A.2d 1049 (1979).

dated February 8, 1995, at No. 89–081–MR, is reversed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority finds that because the Department of Environmental Resources (Department) did not disapprove the Board of Supervisors of Middle Paxton's Township's (Township) third amended official sewage update plan within 120 days of its submission as required by 25 Pa.Code 71.16,[1] it is deemed approved. I believe the Township waived the 120 day notice requirement.

The facts are undisputed. On August 26, 1988, the Township submitted its third updated official sewage plan to the Department providing that at least for the next ten years, the Township sewage disposal needs could be met by on-site disposal. The 120 days time period expired on December 27, 1988. At a December 21, 1988 meeting requested by the Department with Township officials, when the Department made it clear that the third update would not be approved, the Township requested to review the Township's sampling data. On December 30, 1988, three days after the 120 day time period, the Department stated that as a result of the request to review the samples, it was extending the 120 day period for action for an additional 60 days, so that the Township could review the data. Going back on its request, the Township, on January 9, 1989, sent a letter to the Department stating that it no longer wished to review the data and that any extension in the appeal period was untimely. On February 24, 1989, the Department formally disapproved the third update.

Reversing the Environmental Hearing Board, the majority holds that the waiver will occur only where words or conduct of the party seeking this remedy has caused or substantially contributed to the Department's delay. It then goes on to find that the Township's request did not cause the delay because they did nothing to impair the De-

partment's ability to respond within the 120 days.

My disagreement with the majority's holding is twofold: first, by stating that the waiver only occurs when a party must take action that substantially contributes to the delay implies that if the Township formally waives the 120 day notice, that would be ineffective to extend the time, because even a formal waiver does not prevent the Department from responding within the allotted time. I would hold that a township can waive expressly or by conduct the 120 day notice requirement. While I believe the majority's holding could be interpreted that a waiver request extends the time because it impairs the Department's ability to respond, I don't believe that is the majority's intent because it does not go on to address whether the Township's request to review sewage sampling before a decision constituted a waiver.

Its failure to address whether there was a waiver is my second reason for disagreeing with the majority's opinion. There is no dispute that at December 21, 1988 meeting, the Department informed the Township that under no circumstances would it approve the plan because of the results of its samples. The Environmental Hearing Board found at that meeting, which occurred within the 120 day period, "[w]hen the Township asked to review the data, ..., it was obvious that period had to be extended. The Township's request, therefore, effectively waived the 120 day period." I agree the Board that the Township's request necessarily constituted a waiver of the 120 day requirement.

Accordingly, I dissent.

1. 25 Pa.Code §§ 71.16(c) and (d) read as follows:

(c) Within 120 days after submission of the official plan or revision, the Department shall either approve or disapprove the plan or revision.

(d) Upon the Department's failure to approve an official plan within 120 days of its submission, the official plan shall be deemed to have been approved, unless the Department informs the municipality that an extension of time is necessary to complete the review.