616 A.2d 95

**BOROUGH OF DUNMORE, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 19, 1992.

Decided Sept. 22, 1992.

Armand E. Olivetti, Jr., for petitioner.

Barbara L. Smith, for respondent.

Christopher P. Cullen, Sol., for intervenor Borough of Throop.

Before DOYLE and SMITH, JJ., and LEDERER, Senior Judge.

LEDERER, Senior Judge.

The Borough of Dunmore (Dunmore) petitions for review of an order by the Environmental Hearing Board (EHB) which granted summary judgment in favor of the Department of Environmental Resources (DER) on DER's allocation of the host municipality benefit fee payable under Section 1301 of the Municipal Waste Planning, Recycling and Waste Reduction Act[1] (popularly called Act 101), 53 P.S. § 4000.1301, between Dunmore and the Borough of Throop (Throop).

At the center of this dispute is the Logan–Tabor landfill, which is located partly in Dunmore and partly in Throop. The site is owned and operated by Keystone Sanitary Landfill, Inc. (KSL). The 617.7 acre Logan–Tabor landfill operates under DER Permit No. 101247.[2] According to the Permit, 60% of the Logan–Tabor site is located in Throop and 40% is located in Dunmore. Other DER measurements, however, show that the proper allocation of the site is 74.5% in Throop and 25.5% in Dunmore.

KSL also owns the Keystone and Dunmore landfills, which are located entirely in Dunmore and are contiguous with the Logan–Tabor landfill.[3] The Keystone and Dunmore sites currently operate under a closure plan contained in a Consent Order and Agreement between DER and KSL (the Consent Agreement); prior to the Consent Agreement, Keystone and Dunmore operated under DER Permits 100803 and 100174, respectively. The Consent Agreement affected all three DER permits.

1. Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.101–4000.1904.

2. Although Permit No. 101247 (which is in actuality a permit modification issued by DER on May 23, 1990) nominally refers to a facility called Keystone Sanitary Landfill, it is undisputed that the it is the permit under which the Logan–Tabor site operates. (*See* Stipulation of Facts at page 2, R.R. at 7a.)

3. It is undisputed that in addition to being contiguous, the three landfills are partially enclosed by a chain-link fence common to all three sites; that the sites are serviced by a common network of internal roads, storm-water collectors, leachate collectors, wastewater treatment and a shared administrative complex; that the three sites can be accessed solely through public rights-of-way located entirely within Dunmore; and that they share common management and maintenance. (*See* Stipulation of Facts at page 2, R.R. at 7a.)

Based on its measurement of the Logan–Tabor site, DER allocated 74.5% of the host municipality benefit fee to Throop and the remaining 25.5% to Dunmore. Dunmore appealed to the EHB and Throop intervened. The parties submitted a stipulation of facts and filed cross motions for summary judgment. The EHB rejected Dunmore's position that the three landfills should be treated as one landfill for calculating the host municipality benefit fee. Although it did not directly address the area allocation of the Logan–Tabor site, the EHB apparently concluded that DER was not bound by the 60%–40% allocation in Permit 101247. Accordingly, the EHB granted DER's motion for summary judgment and denied Dunmore's cross-motion.

Dunmore timely filed its petition for review to this court.[4] Dunmore's main contention is that the three landfills should be treated as a single entity, with the area of the Keystone and Dunmore sites included in the calculation of the host municipality benefit fee. In the alternative, Dunmore contends that under the permitted area allocation in DER Permit 101247, Dunmore is entitled to 40% of the host municipality benefit fee, not the 25.5% determined by DER.

## I.

■ The first issue for consideration is whether the EHB correctly interpreted Section 1301(a) of Act 101. That Section provides in pertinent part:

**Imposition.**—There is imposed a host municipality benefit fee upon the operator of each municipal waste landfill ... that has a valid permit.... If the landfill or facility is located within more than one host municipality, the fee shall

---

4. Section 704 of the Administrative Agency Law requires this court to affirm the EHB's adjudication unless constitutional rights were violated, errors of law were committed or necessary findings of fact were not supported by substantial evidence. 2 Pa.C.S. § 704. *See, also, T.R.A.S.H., Ltd. v. Commonwealth, Department of Environmental Resources,* 132 Pa.Commonwealth Ct. 652, 574 A.2d 721 (1990), *appeal denied* 527 Pa. 659, 593 A.2d 429 (1990).

be apportioned among them according to the percentage of the permitted area located in each municipality.

53 P.S. § 4000.1301(a).

Dunmore argues that the term "permitted area" should be interpreted to include the Keystone and Dunmore landfills because these contiguous and related sites are also permitted areas and were treated as one by DER in the Consent Agreement. We cannot agree that a fair reading of Section 1301(a) supports Dunmore's interpretation. As the EHB aptly stated in its opinion:

> Section 104(b) of Act 101 requires that the act be read *in pari materia* with the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, as amended, 35 P.S. § 608.101 et seq. Consequently, the meaning of "permit" in Section 1301(a) must be the same as the meaning attributed to it under the SWMA. It must follow that what is meant by the term "permit" is the permit document, itself, which is issued by DER pursuant to Section 503 of the SWMA. As a result, the permitted area set forth in Permit No. 101247 is the only factor that can be considered in allocating the host municipality benefit fee under Section 1301(a) of Act 101. Although the parties agree that the three landfills have a common fence and common support network ... and are under common management and maintenance, there is still no authority or precedent for including the acreage of the Keystone and Dunmore landfills in the calculation of the acreage for the Logan–Tabor landfill.

EHB Opinion, December 13, 1991, at 4–5.

We agree with the EHB's interpretation of Section 1301 of Act 101.[5] Moreover, we conclude that the very language of Section 1301(a) supports the EHB's interpretation. That Section speaks in terms of "*each* municipal waste landfill ... that has *a* valid permit" and "*the* landfill ... located within more

5. We also note the well established principle of statutory construction that deference should be accorded to an agency's interpretation of the statutes it is charged to administer. *See, e.g., Hawkins v. Pennsylvania Housing Finance Agency,* 141 Pa.Commonwealth Ct. 283, 595 A.2d 712 (1991); *Carol Lines, Inc. v. Pennsylvania Public Utility Commission,* 83 Pa.Commonwealth Ct. 393, 477 A.2d 601 (1984).

than one host municipality." 53 P.S. § 4000.1301(a) (emphasis added). From this language, it is clear that the host municipality benefit fee is to be calculated on each separately permitted facility on an independent basis.

The fact that the three landfills herein were dealt with under a single Consent Agreement does not change the fact that each landfill has a defined existence under *separate* DER permits. Furthermore, the terms of the Consent Agreement itself belie Dunmore's contention that the three sites became one landfill. The Consent Agreement clearly sets forth the various violations and remedial actions specific to each permit. (*See, e.g.,* Consent Order and Agreement, Findings of Fact G, J, K and N, pp. 3–4, R.R. 11a–12a; and Order Paragraphs 1, 4, 11 and 21, pp. 11–13 and 20, R.R. 19a–21a and 28a.)

The terms of Permit No. 101247 likewise do not support Dunmore's contention that the three landfills should be treated as one landfill. Part III of the Permit sets forth conditions specific to Permit No. 101247. Condition No. 1 states: "This permit is issued for the construction and operation of a 617.7 acre municipal waste landfill identified as Keystone Sanitary Landfill.... Of the permitted area, 247 acres (which is 40% of the total) are located in Dunmore Borough and 370 acres (which is 60% of the total) are located in Throop Borough." (Permit No. 101247 at 33, R.R. at 91a.)

Consistent with the language of Section 1301(a), the host municipality benefit fee at issue here was properly calculated on Permit No. 101247 only. The terms of that Permit alone determine the area to be considered by DER in calculating the fee. We therefore reject Dunmore's argument and affirm the EHB's decision.

## II.

We next consider whether the issues raised by the 60%–40% permitted area allocation contained in Permit No. 101247 and DER's determination that the proper allocation of that area is 74.5% in Throop and 25.5% in Dunmore. At first glance, this issue seems to involve a disputed issue of fact requiring remand to the EHB for further proceedings. How-

ever, the pleadings filed below indicate that no real question of fact exists.

DER's motion for summary judgment, supported by the affidavit of William Tomayko, Regional Facilities Manager for the Bureau of Waste Management, Wilkes–Barre Region, states as follows:

.    .    .    .    .

7.   On March 14, 1989, the Department determined that the permitted area for Keystone Sanitary Landfill under Permit No. 101247 was located 74.5% in the Borough of Throop and 25.5% in the Borough of Dunmore.   No appeal was taken from this determination.

8.   On May 23, 1990, the Department issued Special Permit Condition # 1 to Keystone and erroneously stated that the permitted area was located 60% in the Borough of Throop and 40% in the Borough of Dunmore.

9.   On August 24, 1990, the Department reiterated its initial determination that 74.5% of the permitted area was in the Borough of Throop and 25.5% was in the Borough of Dunmore.

.    .    .    .    .

12.   The only material fact is the percentage of the permitted area for Keystone Sanitary Landfill under Permit No. 101247 in the Borough of Dunmore and the percentage of the same permitted area in the Borough of Throop.   The Notice of Appeal shows that there is no genuine issue as to this fact.

Dunmore responded as follows in its Answer to DER's motion:

.    .    .    .    .

7.   Admitted in part and denied in part.   It is admitted that on March 14, 1989 [DER] made a determination as to the allocation of the permitted area.   It is denied that no appeal was taken from this determination and, in fact, representatives of [Dunmore], . . . [DER], and members of the General Assembly met at the request of [Dunmore], to review and contest the initial determination of [DER] made on March

14, 1989. As a result of that meeting, the allocation formula was changed to a 60–40 allocation.

8. Admitted in part and denied in part. It is admitted that [DER] issued a special permit as stated; it is specifically denied that the issuance of the permit was erroneous. The Special Permit Condition No. 1 did, in fact, take into consideration two (2) sites currently operating under closure orders, both of which are located entirely within [Dunmore], and both of which are fully integrated into the Keystone Sanitary Landfill, notwithstanding that fact that they are operating under separate permits.

9. Admitted.

.    .    .    .    .

12. Denied. [Dunmore] asserts that Section 1301 of Act 101, 53 P.S.A. § 4000.1301, is ambiguous as worded when applied to the existing condition, and that the question to be resolved is whether or not [DER], under the facts of this appeal, must take into consideration active sites under former permits which are operating under closure orders and which have been fully integrated into a newly-permitted site. The allocation of the permitted area under Permit No. 101247 is not disputed. What is disputed is the failure of [DER] to take into account the two (2) existing permits in arriving at the final allocation formula, given the fact that these permits are currently operating under closure orders and are fully integrated into the existing newly-permitted site.

Dunmore has not challenged the accuracy of DER's 74.5%–25.5% measurement, nor has it sought to have the permitted area re-measured to obtain the proper percentages of area located in Throop and Dunmore. Nothing in the terms of Permit No. 101247 supports Dunmore's allegations that the Keystone and Dunmore landfills were included in the permit or that the 60–40 allocation in any way resulted from consideration of the other two sites. (*See* Condition No. 1, quoted in pertinent part, *supra.*) According to Dunmore, the only dispute before the EHB was whether DER should consider the acreage of the Keystone and Dunmore sites in calculating the

host municipality benefit fee. We have already determined that issue in the negative.

Dunmore's alternative argument, however, is that DER is bound by the 60%–40% allocation contained in Permit No. 101247. DER's counter-argument is that the Permit itself clearly states that it is "subject to modification, amendment and supplement by the Department of Environmental Resources." By its own admissions in answer to DER's motion for summary judgment, Dunmore has acknowledged that it was aware of the 74.5%–25.5% measurement.

Under the EHB Rules of Practice and Procedure, Dunmore had the burden of proceeding and the burden of proving its case by a preponderance of the evidence. 25 Pa.Code § 21.-101(a). Dunmore provided no evidence to overcome the language of the Permit or to dispute the accuracy of the 74.5%–25.5% measurement. Thus, Dunmore failed to fulfill its burdens of proceeding and proof and we conclude that, the Permit being subject to modification, DER was not bound by the 60%–40% allocation.

For all of the foregoing reasons, we affirm the decision of the Environmental Hearing Board.

## ORDER

AND NOW, this 22nd day of September, 1992, the Order of the Environmental Hearing Board in the above-captioned matter is affirmed.