**WILBAR REALTY, INC. and Carl Kresge, President, Petitioners,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1995.
Decided Aug. 11, 1995.
Reargument Denied Sept. 21, 1995.

858

Jeffrey C. Nallin, for petitioners.

Daniel D. Dutcher, Asst. Counsel, for respondent.

Before DOYLE and SMITH, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

Wilbar Realty, Inc. (Wilbar) and Carl Kresge, Wilbar's President, appeal an order of the Environmental Hearing Board (EHB) which upheld the Department of Environmental Resources' (DER) assessment of $35,-050 in civil penalties based on thirteen violations of the Safe Drinking Water Act (Act).[1]

Wilbar, a Pennsylvania corporation, owns and operates the Forest Park[2] and Laurel Lakes[3] public water systems. Forest Park and Laurel Lakes have their own collection, storage, and distribution facilities. Both systems rely on groundwater sources to supply their customers. Forest Park generally uses two wells to serve approximately 355 year-round residents through 70 service connections, while Laurel Lakes generally uses ten wells to serve approximately 80 customers through 53 service connections.

On May 15, 1991, DER assessed a civil penalty of $36,900 against Wilbar based on the following alleged violations of the Act:

1) operating Forest Park's well no. 2 without a permit;

2) failing to submit its 1985 and 1986 annual reports for Forest Park within the time prescribed by law;

3) failing to provide a certified operator for Forest Park;

4) failing to develop an emergency response plan for Forest Park;

5) failing to conduct annual sanitary surveys for Forest Park;

6) failing to develop or implement an operation and maintenance plan for Forest Park;

7) failing to prepare, maintain, or submit monthly operational reports for Forest Park;

8) failing to monitor and report radiological contamination;

9) failing to comply with the Department's compliance order of December 29, 1987;

10) failing to notify the Department within one hour of knowing that Forest Park customers were receiving inadequate drinking water;

11) failing to comply with the Department's emergency compliance order of January 4, 1988, regarding Forest Park,

---

1. Act of May 1, 1984, P.L. 206, *as amended,* 35 P.S. §§ 721.1–721.17.

2. Forest Park is located in Bear Creek Township, Luzerne County. Wilbar has owned and operated Forest Park since January 1, 1978.

3. Laurel Lakes is located in Rice Township, Luzerne County. Wilbar has owned and operated Laurel Lakes since May, 1983.

which, among other things, directed Wilbar to issue a boil water advisory within four hours;

12) failing to notify the Department within one hour of knowing that Laurel Lakes customers were receiving inadequate drinking water;

13) failing to issue a boil water advisory to Laurel Lakes customers after the Department determined that an imminent hazard was present; and,

14) failing to comply with the Department's emergency compliance order of June 30, 1989.

(EHB, Finding of Fact No. 13.) DER calculated the total penalty of $36,900 by assessing an individual penalty for each violation and totaling those assessments.[4]

Wilbar appealed the DER's action to the EHB on June 14, 1991. The EHB held de novo hearings on the merits from March 25, 1992 through March 27, 1992. In its post-hearing brief, Wilbar contested on substantive grounds only one of the fourteen alleged violations: the failure to monitor and report for radiological contamination (no. 8). The EHB found that the notice from DER regarding that violation did not adequately inform Wilbar as to which monitoring period it applied. Although the evidence presented by DER suggested that the violation did in fact apply to the monitoring period ending in 1984, the EHB concluded that the notice did not adequately inform Wilbar of this fact, and thus, did not meet the minimum requirements of procedural due process in an administrative proceeding. See Begis v. Industrial Board of the Department of Labor and Industry, 9 Pa.Commonwealth Ct. 558, 308 A.2d 643 (1973).

As a result of this determination, the EHB reduced the penalty imposed on Wilbar by $1,850, the assessed penalty for that violation. However, the EHB upheld the $35,050 assessed penalties for the remaining thirteen violations because there existed a "reasonable fit" between the violations and the penalty imposed. In arriving at this conclusion, the EHB found that violation no. 1, Wilbar's operation of Forest Park's well no. 2 without a permit, would, in and of itself, justify a penalty of $35,050. The EHB noted that Wilbar persisted in this violation for over three years and that DER was authorized to assess a penalty of $5,000 per day; thus, the total penalty of $35,050 amounted to only approximately $32 per day for this one violation alone. Considering that DER could have assessed a penalty in excess of $5 million for this one violation, the EHB did not believe that a total penalty of $35,050 for all thirteen violations was excessive. Furthermore, Wilbar had ample notice that it was in violation, having been informed that it needed a permit for this well on over a dozen occasions. The EHB concluded that "[g]iven the egregious and protracted nature of Wilbar's unlawful operation of well no. 2, a penalty of $35,050 is not unreasonably high, even if the entire amount were based solely on the unlawful operation of well no. 2." (EHB Opinion at 18.) Based on this conclusion, the EHB upheld the assessment of $35,050 in penalties for all thirteen violations. Since it determined that the penalty would have been justified based solely on violation no. 1, the EHB did not believe it was necessary to evaluate the appropriateness of the penalties imposed for the other violations on an individual basis.[5]

Wilbar appeals from the order of the EHB to this Court.[6] On appeal, Wilbar argues the

4. The penalties for each violation were as follows:

| Violation | Fine |
| --- | --- |
| no. 1 | $3,250 |
| no. 2 | $ 750 |
| no. 3 | $2,350 |
| no. 4 | $ 850 |
| no. 5 | $ 850 |
| no. 6 | $ 750 |
| no. 7 | $ 750 |
| no. 8 | $1,850 |
| no. 9 | $5,000 |
| no. 10 | $3,500 |
| no. 11 | $5,000 |
| no. 12 | $3,500 |
| no. 13 | $3,500 |
| no. 14 | $5,000 |

5. DER argued before the EHB that the penalty assessed was actually unreasonably low and that the EHB should impose a higher penalty. The EHB declined to do so and DER has not appealed that decision.

6. Our scope of review of EHB decisions is limited to a determination of whether the EHB committed any errors of law, violated the constitu-

following: (1) the EHB violated Wilbar's constitutional right of due process of law and erred as a matter of law in concluding that the total penalty of $35,050 was reasonable when it failed to make findings of fact or conclusions of law regarding the appropriateness of penalties imposed for twelve of the thirteen violations; and (2) the EHB erred as a matter of law in not considering whether DER had waited an excessively long period of time after the violations had occurred before assessing the penalties and had improperly based the penalty assessment eventually imposed on Wilbar on its receipt of a Penn-Vest Loan.

Wilbar's first argument is that the EHB could not impose a penalty of $35,050 based on a single violation of the Act, when DER originally assessed a fine of only $3,250 for the same violation. Wilbar maintains that the EHB's reliance on this single violation and its complete failure to consider the appropriateness of the fines assessed in connection with the other twelve violations effectively denies it its right to procedural due process. Wilbar further argues that if the EHB's action in this case is upheld, DER will be allowed to impose any penalty it wishes in the future, no matter how egregious, so long as it can prove even one violation. Wilbar believes that this will create an inherently unfair situation in which persons in Wilbar's position would be deterred from exercising their right of appeal, since they could be subject to the maximum penalty unless they were vindicated on all charges.

■ We initially acknowledge that this Court cannot simply substitute its judgment for that of the EHB, and, as long as the penalties imposed "reasonably fit" the violations found, we will uphold the EHB's determination. *Trevorton Anthracite Co. v. Department of Environmental Resources,* 42 Pa.Commonwealth Ct. 84, 400 A.2d 240

(1979). Nonetheless, if the EHB had in fact *increased* the penalty imposed on Wilbar by $31,800, from $3,250 to $35,050, for this single violation of the Act, we believe such action would have been unreasonable and would have constituted an abuse of discretion.

■ The penalties in this case were assessed by DER pursuant to Section 13(g) of the Act,[7] which states in pertinent part:

In addition to proceeding under any other remedy available at law or in equity for a violation of any provision of this act, any rule or regulation of the department or order of the department or any term or condition of any permit issued by the department, the *department* may assess a civil penalty upon a person for such violation. Such a penalty may be assessed whether or not the violation was willful or negligent.... [I]f the person wishes to contest either the amount of the penalty or the fact of the violation, the person shall within the 30–day period, file an appeal of the action with the Environmental Hearing Board. Failure to appeal within 30 days shall result in a waiver of all legal rights to contest the violation or the amount of the penalty. The maximum civil penalty which may be assessed pursuant to this section is $5,000 per day for each violation.... (Emphasis added.)

And, we have previously held that the EHB, in conducting a de novo hearing, may substitute its own discretion for that of DER. *Western Hickory Coal Co. v. Department of Environmental Resources,* 86 Pa.Commonwealth Ct. 562, 485 A.2d 877 (1984). However, the language of the Act at issue in this case specifically authorizes *DER* to assess penalties; nowhere in the Act, or in the EHB's enabling legislation,[8] do we find authority which would allow the EHB to either assess penalties[9] or increase penalties initial-

---

tion, or made any necessary findings of fact which were unsupported by substantial evidence. *T.R.A.S.H., LTD. v. Department of Environmental Resources,* 132 Pa.Commonwealth Ct. 652, 574 A.2d 721, *petition for allowance of appeal denied,* 527 Pa. 659, 593 A.2d 429 (1990).

7.  35 P.S. § 721.13(g).

8.  Environmental Hearing Board Act, Act of July 13, 1988, *as amended,* P.L. 530, 35 P.S. §§ 7511–16.

9.  We note that the EHB as part of its jurisdiction does have the authority to initially impose civil penalties in some cases. *See, e.g.,* Dam Safety and Encroachments Act, Act of Nov. 26, 1978, P.L. 1375, *as amended,* 32 P.S. § 693.21. How-

ly assessed by DER. Furthermore, we have failed to uncover a single case decided by this Court in which the EHB increased a civil penalty imposed by DER. Therefore, we must conclude that the EHB could not have properly imposed a penalty of $35,050 based on a single violation of the Act for which DER imposed a penalty of only $3,250.

■ Further, Wilbar's argument is nonetheless misplaced. The total penalty of $35,050 was in fact based on thirteen separate violations of the Act, not just one as suggested by Wilbar. Wilbar did not contest these other violations in its post-hearing brief,[10] and thus waived its right to challenge the EHB's finding that it in fact committed these violations. *Lucky Strike Coal Co. v. Department of Environmental Resources,* 119 Pa.Commonwealth Ct. 440, 547 A.2d 447, *petition for allowance of appeal denied* (1988). As a result, Wilbar's challenge to the assessment of penalties is not premised on the EHB having incorrectly found Wilbar to have committed the violations, but rather, on the EHB's failure to consider the appropriateness of the penalty imposed for each individual violation of the Act.

■ Although we do not endorse the method used by the EHB in reaching its decision, we do not believe that under the facts of this case it amounts to reversible error. Having found that Wilbar had committed thirteen violations, the EHB only had to determine whether the penalties imposed were appropriate. The EHB determined that the first violation in and of itself would have supported the total penalty of $35,050. Since it found that the total penalty would have been reasonable based solely on the first violation, the EHB did not feel it was necessary to analyze the penalties imposed for the remaining twelve violations. The EHB concluded: "the Department need only

show that the *total* penalty assessed is reasonable given the violations proven; it need not show that a reasonable fit exists between each individual penalty used in the calculation of the total and each individual violation." (EHB Opinion, Conclusion of Law No. 6.) (Emphasis in original.)

■ An examination of the penalties imposed for the other violations shows that they ranged in amount from $750 to $5,000. Section 13(g) of the Act permits DER to impose a maximum penalty of $5,000 per day for each violation. Furthermore, such penalties can be imposed regardless of whether the violations are committed willfully or negligently. Considering the prolonged nature of many of Wilbar's violations and the fact that none of the penalties imposed are greater than that allowed for a single violation occurring on a single day, we must reject Wilbar's argument that the penalties imposed are unreasonable and inappropriate given the violations committed.[11]

■ Wilbar's second argument is that the EHB erred as a matter of law by not considering whether DER had waited an excessively long period of time after the violations had occurred before assessing the penalties and that DER improperly assessed the penalties only after Wilbar's receipt of a PennVest Loan. The EHB determined that Wilbar had waived this argument since it did not raise it in its notice of appeal to the Board. (EHB Opinion at 21.) Nevertheless, Wilbar argues that it was unable to raise this argument in its notice of appeal, because it only learned of DER's improper conduct through discovery. Therefore, Wilbar contends that the EHB should not have dismissed its argument concerning DER's improper consideration of the PennVest Loan without first reviewing the merits of its claim.

---

ever, the EHB was not given that authority under the Safe Drinking Water Act.

.

10. As referenced earlier, Wilbar did contest a fourteenth violation, failure to monitor and report for radiological contamination at the Forest Park facility. EHB agreed with Wilbar that proper notice of the monitoring period for this violation was not given by DER, and consequently, the EHB invalidated DER's assessment of

$1,850 for the violation, thus reducing the total penalty from $36,900 to $35,050.

11. We note that even if the reasoning which the EHB used in reaching its decision was flawed, this Court may still affirm that decision where the record clearly shows that it was correct. *Haney v. Workmen's Compensation Appeal Board,* 65 Pa.Commonwealth Ct. 461, 442 A.2d 1223 (1982).

Wilbar's argument, however, is flawed. First, Section 21.51(e) of Title 25 of the Pennsylvania Code, 25 Pa.Code § 21.51(c), states specifically that:

The appeal [to the EHB] shall set forth in separate numbered paragraphs the specific objections to the action of [DER]. The objections may be factual or legal. *An objection not raised by the appeal shall be deemed waived, provided that, upon good cause shown, the [EHB] may agree to hear the objection. For the purpose of this subsection, good cause shall include the necessity for determining through discovery the basis of the action from which the appeal is taken.* (Emphasis added.)

Wilbar concedes that it did not raise the issue of whether DER improperly imposed the penalty based on Wilbar having obtained a PennVest Loan in its notice of appeal. Therefore, this issue is waived unless Wilbar can show good cause for not including it in its notice of appeal. *Pennsylvania Game Commission v. Department of Environmental Resources,* 97 Pa.Commonwealth Ct. 78, 509 A.2d 877 (1986), *aff'd,* 521 Pa. 121, 555 A.2d 812 (1989).

█ The sole ground alleged by Wilbar for the untimeliness in raising this issue is that it only became aware of the facts necessary to support its allegation through discovery. However, Wilbar obviously had knowledge of the PennVest loan at the time it had received the loan; it also knew of the time delay between the first alleged violation and DER's original assessment of penalties against it. It had all of this information before it filed its notice of appeal with the EHB. In addition, Wilbar has failed to cite to anything in the record which would constitute new information, which was not known or obtainable to Wilbar prior to discovery, and which would support a motion to amend its notice of appeal.[12] We must thereby conclude that the EHB did not err in finding that Wilbar waived this issue. *See Pennsylvania Game Commission; Newtown Land Limited Partnership v. Department of Environmental Resources,* —— Pa.Commonwealth Ct. ——, 660

A.2d 150 (1995). Therefore, Wilbar's final argument was waived.

Accordingly, we affirm the order of the EHB.

### *ORDER*

NOW, August 11, 1995, the order of the Environmental Hearing Board in the above-captioned matter is hereby affirmed.

---

12. We further note that normally the need for discovery to uncover additional grounds for an appeal before the EHB does not constitute good cause unless such a requirement is pled in the original appeal. 25 Pa.Code § 21.51(e); *Pennsylvania Game Commission.*