# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Wayco Sand and Gravel, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 713 C.D. 2018 |
| | : Submitted: March 22, 2019 |
| Department of Environmental | : |
| Protection and Peter Karnick, | : |
| | : |
| Respondents | : |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge[1]
HONORABLE MICHAEL H. WOJCIK, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: January 6, 2020


Wayco Sand and Gravel (Wayco) petitions for review of the order of the Environmental Hearing Board (EHB) sustaining Peter Karnick's (Landowner) appeal from the Department of Environmental Protection's (DEP) approval of the Stage I and II bond release to Wayco for the permitted area of Landowner's property. We affirm.

Wayco is in the business of asphalt paving and conducts surface mining of sand and gravel. In July 1994, Wayco was issued a noncoal surface mining permit to conduct operations on a 7.6-acre portion of Landowner's property

---

[1]This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge and was decided before Judge Simpson's service on the Court ended on December 31, 2019.

in Waymart, Pennsylvania, identified as Parcel 13 on Module 15 (the Site). *See* Reproduced Record (R.R.) at 117, 120, 848-62. Mining support activities occurred on the Site that included the processing of sand and gravel, but no mining or extraction of minerals occurred there and there were no pits or highwalls on the Site. The Site was previously mined for sand and gravel and was reclaimed before Wayco and Landowner entered into a 10-year lease for Wayco to use it for processing minerals that had been extracted from other sites.

As part of the processing operations, Wayco constructed several ponds or impoundments on the Site, including two large silt or sedimentation ponds or basins (silt ponds). *See* R.R. at 252-54, 890. There are drainage problems associated with the continued presence of the silt ponds on the Site affecting drainage patterns and preventing adequate drainage. *See id.* at 252-54. Wayco's attempts to improve the draining problems associated with its decision to leave the silt ponds on the Site have not eliminated the drainage problems. *See id.* at 261.

Section 17.1 of Module 17, relating to Post-mining Use and Reclamation, states that "the present land use is forestland with a portion as pastureland," that the "[a]ffected areas will be restored to forestland," and that the "[Approximate Original Contour (AOC)[2]] will be restored during reclamation."

---

[2] Section 3 of the Noncoal Surface Mining Conservation and Reclamation Act (Act), Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §3303, defines AOC as "[c]ontouring as defined in this act" which, in turn, is defined as:

> Reclamation of the land affected to [AOC] so that it closely resembles the general surface configuration of the land prior to mining and blends into and complements the drainage pattern of the surrounding terrain with no highwall, spoil piles or depressions to accumulate water and with adequate provisions for drainage.

**(Footnote continued on next page…)**

2

R.R. at 905. Section 17.2 states, "The [S]ite will be restored to AOC by regrading. Positive drainage will be produced and forestland restored. Reclamation will increase the amount of forestland on the permit area." *Id.*

On November 26, 2014, DEP informed Landowner that Wayco had applied for a Stage I and II bond release of liability on the permit and that an inspection would be scheduled "to evaluate the adequacy of the reclamation work performed." R.R. at 919.[3] On July 1, 2016, DEP sent Landowner a letter stating

**(continued…)**

*See also* Section 77.1 of DEP's regulations, 25 Pa. Code §77.1 (same). Additionally, Section 77.1 of DEP's regulations defines "reclamation" as "[a]ctions taken to reclaim the area affected by surface mining activities as required by this chapter." *Id.*

[3] Section 77.242(a) of DEP's regulations sets forth the procedure for seeking a Stage I and II bond release stating, in relevant part:

> (a) *Release of bond.* The permittee may file an application with [DEP] for release of all or part of the bond liability applicable to a permit or designated phase of a permit area after reclamation, restoration and abatement work in a reclamation stage, as defined in §77.243 (relating to criteria and schedule for release of bond), has been completed on the permit area or designated phase of a permit area, subject to the following conditions:
>
> (1) Applications may be filed only at times or seasons that allow [DEP] to properly evaluate the reclamation operations reported to have been completed.
>
> (2) Within 60 days after filing the application for release, the permittee shall submit proof of publication of the advertisement [of the filing of the application in a newspaper of general circulation in the locality of the permit area as] required by subsection (b).

25 Pa. Code §77.242(a).

**(Footnote continued on next page…)**

Section 77.243(b)(1), (2) and (c) sets forth the standards governing the bond release:

(b) For the purposes of this section the following apply:

(1) Reclamation Stage I shall be deemed to have been completed when:

(i) The permittee completes backfilling, regrading and drainage control in accordance with the approved reclamation plan.

(ii) Topsoil has been replaced and revegetation has been established in accordance with the approved reclamation plan and the standards for the success of revegetation are met.

(iii) The lands have been stabilized to prevent accelerated erosion and sedimentation under Chapter 102 (relating to erosion control).

(iv) The permittee has successfully completed mining and reclamation operations in accordance with the approved reclamation plan, so that the land is capable of supporting post-mining land use approved under §77.653 (relating to post-mining land use).

(v) The permittee has achieved compliance with the requirements of the environmental acts, this chapter and the conditions of the permits.

(2) Reclamation Stage II shall be deemed to be complete when the applicable liability period under §77.204 (relating to period of liability) has expired.

(c) [DEP] will not release a bond amount deposited . . . if the release would reduce the total remaining amount of bond to an amount which would be insufficient for [DEP] to complete reclamation and to take measures that may be necessary to prevent adverse effects upon the environment or public health, safety or

**(Footnote continued on next page…)**

4

that following a field inspection "to evaluate the adequacy of the reclamation work performed and the success standards of the vegetation that has been planted," DEP intended to release the bond posted on the site based on its determination that "the reclamation work performed and revegetation success of the [S]ite meets the requirements contained in the mine permit and [DEP's] rules and regulations[.]" *Id.* at 921. On July 21, 2016, DEP released Wayco's bond. *Id.* at 923.

On August 10, 2016, Landowner appealed DEP's release of Wayco's bond alleging, *inter alia*, that the Site "was not reclaimed to where [h]e could use it" because the "silt ponds are 5 to 8 [feet] deep with swamp grass and willows" and that the "dams on the silt ponds are keeping [the] ponds from drying out." R.R. at 1. Landowner also asserted that DEP had not classified the Site as "wetlands," and that it is now overgrown "with swamp grass [and] weeds and it's to[o] rough to farm." *Id.* In sum, Landowner stated, "All I want is [the] land

---

**(continued…)**

> welfare under the environmental acts, the [A]ct, this chapter, the terms and conditions of the permits and order of [DEP].

25 Pa. Code §77.243(b)(1) and (2), (c).

In turn, Section 77.204(a) states:

> (a) Liability under bonds posted for a noncoal mining activity shall continue for the duration of the mining activities and its reclamation as provided in the act, this chapter and the conditions of the permit for 5 years after completion of the mining and reclamation of the area, unless released in whole or in part prior thereto if [DEP] is satisfied that the reclamation covered by the bond has been accomplished as required by the act.

25 Pa. Code §77.204(a).

reclaimed so [I] can use it again without getting stuck in [the] silt ponds [that] Wayco created." *Id.*

On September 13, 2016, DEP sent Landowner a letter that stated the following, in relevant part:

> On June 28, 2016, a field inspection was conducted at the [S]ite to evaluate the adequacy of the reclamation work performed and the success standards of the vegetation that had been planted. You were present at the inspection.
>
> During this inspection you expressed concerns and/or objections to: 1) grading[4] of the out slopes[5] of the former sedimentation ponds; 2) stability of surface of the former sedimentation ponds; 3) former sedimentation ponds still holding water; 4) revegetation of the upper area above the access road; 5) amount of rent payment that Wayco was to pay you; and 6) verbal agreements made with Wayco and you and that were not honored. Your concerns are addressed below, respectively:
>
> 1. Grading of the out slopes of the former sedimentation ponds:
>
> [DEP] determined that Wayco graded the out slopes of the former sedimentation ponds to approximately an 18° slope, which is less than the 35° reclamation slope required by the rules and regulations of [DEP] under 25

---

[4] "Grade" is defined, *inter alia*, as "a rate of ascent or descent," or the "deviation from a level surface to a inclined plane stated as so many feet per mile . . . or as one foot rise or fall in so many feet of horizontal distance . . . or as so much in a hundred feet or as a percentage of horizontal distance." Webster's Third New International Dictionary 985 (1986).

[5] "Slope" is defined, *inter alia*, as "ground whose surface forms an angle with the plane of the horizon : a natural or artificial incline (as a hillside or terrace)" or the "upward or downward slant or inclination : degree or extent of deviation from the horizontal or perpendicular." Webster's Third New International Dictionary 2145 (1986).

Pa. Code §77.594.[6]  The grading is also consistent with the [AOC] of the surrounding landscape.

2. Stability of surface of the former sedimentation ponds:

[DEP] determined that Wayco stabilized the surface of the former sedimentation ponds by digging two drainage ditches from each pond and filling the drainage ditches with rock to ensure that no water would be retained by the former sedimentation ponds.  The trenching was initiated in June 2013 and was completed by October 2013.  Once this trenching was completed, material was pushed from the out slopes of the ponds to cover and stabilize the surface of the ponds.  Since October 2013, [DEP] has been monitoring and evaluating the stability of the former sedimentation ponds.  After this length of time monitoring and evaluating the stability of the former sedimentation ponds, [DEP] determined that the former sedimentation ponds are stabilized.  In addition, [DEP] has driven its vehicle on the reclaimed areas, including the former sedimentation ponds, without sinking in or getting stuck.

3.  Former sedimentation ponds still holding water:

Wayco dug two drainage ditches from each sedimentation pond and filled the drainage ditches with rock to ensure that no water would be retained by the

---

[6] Section 77.594(2) of DEP's regulations provides, in pertinent part, "If terracing is approved for post-mining reclamation, the final overall slope shall be 35° or less unless otherwise approved under subparagraph (v)." 25 Pa. Code §77.594(2).  In turn, Section 3 of the Act defines "terracing" as follows:

Grading where the steepest contour of the highwall is not greater than 35[°] from the horizontal, with the table portion of the restored area a flat terrace without depressions to hold water and with adequate provision for drainage, unless otherwise approved by [DEP].

52 P.S. §3303.

former sedimentation ponds. Since October 2013, [DEP] has been monitoring and evaluating the stability of the former sedimentation ponds. After this length of time monitoring and evaluating the stability of the former sedimentation ponds, [DEP] determined that the former sedimentation [ponds] are stabilized.

4. Revegetation of the upper area above the access road:

Wayco revegetated the upper area above the access road as directed by [DEP] in July 2015, to address your concerns. Although, at the time, this upper area met [DEP] standards for successful revegetation under 25 Pa. Code §77.618.[7]

R.R. at 925-26.

---

[7] Section 77.618(b)(1), (2) and (3) of DEP's regulations states:

(1) The standards for successful revegetation shall be determined by ground cover.

(2) The approved standard shall be the percent ground cover of the vegetation which exists on the proposed area to be affected by surface mining activities. [DEP] will not approve less than a minimum of 70% ground cover of permanent plant species with not more than 1% of the area having less than 30% ground cover with no single or contiguous area having less than 30% ground cover exceeding 3000 square feet. When woody species are planted in mixture with herbaceous species, these standards shall be met and a minimum of 400 woody plants per acre shall be established unless alternate plans are approved or required by [DEP]. On slopes greater than 20[°], the minimum number of woody plants shall be 600 per acre.

(3) The percent of ground cover of the mined area shall meet the standards of paragraph (2) to qualify for Reclamation Stage I and Reclamation Stage II approval.

25 Pa. Code §618(b)(1), (2) and (3).

8

With respect to Landowner's concerns regarding the amount of rent that Wayco was to pay and the verbal agreements with Wayco that were not honored, DEP explained that it "has no authority to enforce any lease agreement and/or rent or royalty payment between the landowner and the permittee," and "no authority to enforce any verbal agreements that were discussed between the landowner and the permittee." R.R. at 926. As a result, DEP again notified Landowner "that the bond for the permitted site was eligible for release" and that "[t]he issued bond release materials [were] available for review at [its] Pottsville District Office." *Id.* at 927.

On October 11, 2016, Landowner appealed DEP's decision to EHB, summarizing his objection to the bond release as follows:

> I had leased the property to Wayco Inc. for the purpose of processing the sand and gravel. [It] operated the[] plant there for 15 years with the agreement that [it] would reclaim the property to an "as good or better" condition than what it was. [It] built two large silt ponds which held the[] waste material. The dams for these ponds are still present, along with all of the waste material. These dams are too steep to drive farm equipment on, and during wet seasons, you cannot drive onto the waste-filled ponds. I am not asking for Wayco to remove all of the waste material, but to simply grade the dams down to an even slope, allow the waste material to dry out, and allow my property to be useful again. This farm has been in the family for close to 100 years, and I just would like it to be put back into a condition that would make it suitable for future generations.

R.R. at 8.

Before EHB, DEP Surface Mine Conservation Inspector Gary Harper was qualified as an expert in noncoal surface mining reclamation. R.R. at 112. With respect to the reclamation of the Site, he testified that Section 77.592 of

9

DEP's regulations "covers [AOC]," and that "AOC means you are approximating what was there to begin with [a]nd if you can look at it and it seems to blend in [with] the landscape . . . and it looks a lot like the original landscape . . . it's reclaimed to AOC." R.R. at 107-08. Harper stated that the steepest slope at the Site in April 2012, after the first regrading was 30°, but that the average slope after a subsequent regrading was around 12° to 16° in October 2012, with one slope measuring 18.75°. *Id.* at 144-45, 147-48, 151. He testified that Wayco's permit provides that the Site should be returned to AOC and that the permit also allows 35° terracing based on the applicable DEP regulations. *Id.* at 170-71. He stated that the Site was reclaimed to AOC except where Landowner asked for a terrace "by his barn," that terracing could include AOC and those portions of the Site that were terraced, and that Wayco was permitted to terrace the Site and indicated terracing on a completion report. *Id.* at 174-175, 176, 177-78.

Harper conceded that a soil test was required by one of the modules, but that Wayco did not submit one and that Module 15 stated that "the [S]ite will be reclaimed to AOC." R.R. at 182-83, 185. He acknowledged that the permit states that the Site had slopes ranging from 12% at the highest elevations to 1% at the lowest and estimated that the final average slope was 8° or 9°, but that DEP did not measure the final slopes after reclamation. *Id.* at 186, 188. Harper also acknowledged that he did not know whether DEP applied a 35° terracing or an AOC standard when it approved the bond release and that the 35° standard applies to AOC, but he did not know where that could be found in the regulations. *Id.* at 196-97, 312.

EHB also qualified DEP Surface Mine Conservation Inspection Supervisor Gary Latsha as an expert in noncoal surface mining reclamation. R.R.

10

at 207.[8]   Regarding the reclamation of the Site, Latsha testified that it was reclaimed to AOC even though the Completion Report indicates that there was a 35° terrace reclamation.  *Id.* at 207-08.  He stated that Module 15 states that the entire Site would be reclaimed to AOC and that Module 17 states that AOC would be restored through regrading, the reduction of positive drainage, and the restoration of forestland.  *Id.* at 208-09, 210-11.  He testified that although the Site was reclaimed to AOC, any terracing that was done occurred at the south end of the Site and that soil reports should have been submitted, but they were not.  *Id.* at 216, 222.

Latsha conceded that he had no knowledge of the specifics of a DEP October 18, 2012 Inspection Report, which recommended that the dams at the Site be torn down to 8 to 10 feet and that the land be regraded over the silt ponds even though the report was sent to his attention.  R.R. at 224-26.  He testified that he generally agreed that the slopes on the Site should be cut down, that he did not recall a specific number, and that Wayco cut down the slopes even though DEP did not require it to do so.  *Id.* at 225, 227.  He stated that DEP would not allow slopes in excess of 35° and that 35° slopes "also applied to [AOC]," but that he did not "necessarily know that it applies to [AOC] because [they were] trying to . . . blend the area into the surrounding area" so that "[t]here may be parts that are a little steeper" and "parts that are shallower."  *Id.* at 239.

---

[8] EHB also qualified Jeff Weinberger, a Wayco employee working in engineering, estimating, and permit managing, as an expert professional engineer in noncoal mining reclamation.  R.R. at 320-21.  He testified, in relevant part, that the Site was returned to the 70% minimum permanent plant species revegetation standard, and the 30% non-revegetation standard, of property other than cropland as provided in Section 77.618(b) of DEP's regulations, 25 Pa. Code §77.618(b).

11

Based on Landowner's, Harper's, and Latsha's testimony, and the related exhibits, EHB found that "[t]he problem with reclamation on the Site in achieving AOC was excess material in the form of silt ponds," and "[t]he silt ponds on the Site grew over time as Wayco processed more materials from more sites where minerals were extracted" so that "[a]s more materials were processed in the silt ponds, more processing waste was left on the Site." R.R. at 1177. EHB found that "[w]hen Wayco mined the adjoining Andrews property, [it] placed excess material on the Site, and the final reclamation of the Site had to account for that excess material," so "[a] terrace was done on a part of the Site and AOC was done on the rest of it." *Id.* EHB found that "[d]espite Wayco's efforts to regrade the silt ponds and to reduce the final slopes of the edges of the silt ponds, the silt ponds remain in place on the Site," and that "they still contain substantial amounts of silt and other waste materials from Wayco's long term processing operations on the Site." *Id.* at 1178.

EHB summarized Landowner's argument on appeal as "Wayco never returned his property to its [AOC] and instead employed terracing in its reclamation efforts, in addition to leaving behind sedimentation ponds lacking in proper drainage." R.R. at 1179. With respect to DEP's and Wayco's claims on appeal, EHB characterized them as the "telling of two stories," initially asserting that terracing, including a 35° final slope requirement, was an alternative to AOC, and then later conflating the separate and distinct AOC and terracing statutory and regulatory standards for reclamation in the proceedings. *Id.* at 1183, 1187.[9]

---

[9] As EHB explained:

> It is apparent to [EHB] that Wayco and [DEP] had something of an epiphany following [EHB's] explanation of the

**(Footnote continued on next page…)**

EHB determined that, "[i]n general, Sections 77.592 and 77.593 provide for reclamation to return a site to [AOC] unless [DEP] approves alternative reclamation to contouring. 25 Pa. Code §§77.592-593." R.R. at 1182 (footnote omitted). However, "[i]f there is sufficient material to achieve AOC, and no alternative is approved under Section 77.593, Section 77.594(1) requires that the final slopes approximate the general nature of pre-mining topography. 52 P.S. §3303; 25 Pa. Code §77.594(1)." *Id.* at 1182-83.

Quoting Section 77.1 of DEP's regulations, EHB explained that "AOC is defined as '[r]eclamation of land affected to approximate original contour so that it closely resembles the general surface configuration of the land prior to mining and blends into and complements the drainage pattern of the surrounding terrain with no highwall, spoil piles or depressions to accumulate water and with adequate provision for drainage.' 25 Pa. Code §77.1." R.R. at 1205. Quoting Section 77.591 of DEP's regulations, EHB noted that "'[a]reas disturbed . . . shall be reclaimed by contouring, except terracing may be utilized if the operator

_____

**(continued…)**

regulatory requirements governing the terracing alternative to AOC and the related 35[°] final slope requirement. At the hearing, [DEP] and Wayco more or less abandoned their joint position that the mining permit allowed the terracing alternative for the reclamation of the Site and the availability of the 35[°] final slope requirement. [DEP] and Wayco shifted their positions at the hearing and only asserted that the final reclamation of [Landowner's] property met the applicable AOC requirement. The complete record before [EHB] establishes that this belated argument was not the reason that [DEP] and Wayco gave [Landowner] when [DEP] granted Wayco's application for bond release in 201[6].

R.R. at 1185 (footnote omitted).

13

demonstrates that the operation has extracted quantities of minerals so that contouring cannot be achieved with the remaining overburden and waste material.' 25 Pa. Code §77.591." *Id.* at 1204.

EHB stated that the only "two situations where an alternative form of reclamation to [AOC] may be used" are "where the applicant demonstrates 'that the proposed operation will be carried out over a substantial period of time and that the volume of mineral to be removed is large compared to the overburden to restore the area to [AOC],'" pursuant to Section 77.593(1) of DEP's regulations, and where the foregoing requirements "are not met and the applicant 'demonstrates that the operation will either restore the land affected to a condition capable of supporting the uses it was capable of supporting prior to mining or to a higher or better use,'" under Section 77.593(2). R.R. at 1204-05.

EHB concluded that "AOC was the correct reclamation standard to apply to the Site, because the site was never mined and used only for processing operations by [Wayco]. 25 Pa. Code §77.591," and that "[t]he 35[o] final slope requirement is a requirement related to the terracing alternative to AOC and it is not part of the AOC reclamation standard. 25 Pa. Code §§77.592-594." R.R. at 1205. EHB also concluded that "Wayco's reclamation of [Landowner's] property did not meet the AOC reclamation standard. 52 P.S. §3303; 25 Pa. Code §77.1[10]'";

---

[10] In this regard, EHB "[did] not find the testimony of [DEP's] and Wayco's multiple expert witnesses that Wayco's reclamation of the Site achieved AOC to be credible." R.R. at 1199. Specifically, EHB explained:

> Regardless of the fact that [Landowner] did not present expert witnesses, we find that the testimony of the multiple expert witnesses proffered by [DEP] and [Wayco] was not credible and leaves us unconvinced as to the legal basis for [DEP's] approval of Stage I and II bond release. The expert witness testimony was

**(Footnote continued on next page…)**

"[t]he terracing alternative to AOC and the related 35[o] final slope requirement is not applicable to the reclamation of [Landowner's] property because no mineral extraction occurred on [Landowner's] property and there were sufficient materials to achieve AOC.  25 Pa. Code §§77.591-594"; and "[n]either of the two situations where an alternative form of reclamation to AOC applies in this appeal.  25 Pa. Code §77.593."  *Id.*

---

**(continued…)**

> clearly self-serving statements that ignored key facts and was based on a fundamental misunderstanding of AOC requirements.

*Id.* at 1200.

Rather, EHB determined that

> [Landowner's] testimony regarding the state of his property prior to Wayco's processing operations on the Site as compared with the state of his property after Wayco left to be compelling.  Put another way, [Landowner] convinced [EHB] that his property was not returned to AOC, which is what [DEP] and Wayco insisted had been done.  [Landowner] described the still present silt ponds on his property, which had not existed prior to Wayco's use of the Site for processing operations:  "[T]he biggest concern is the silt in the silt pond [. . .].  I'd say maybe it's eight, ten, or maybe even deeper feet deep.  And I see no way that they can ever be dried out unless they got exposed to the air."  [R.R. at 253].  According to [Landowner's] testimony, the silt ponds are unsafe due to being steep and saturated.  [*Id.* at 253-254].  Further, [Landowner] "kind of figured if a guy uses your property for 15 years, he could put it back where it was" and this was not done, as water is trapped in the silt ponds and the silt is still in them.  [*Id.* at 256, 261].  Taken together, [EHB] finds these statements to be compelling support for Wayco having failed to return the Site to AOC.

*Id.* at 1200-01 (footnote omitted).

15

As a result, EHB concluded that "[t]he requirements of Stage I and Stage II bond release, found in Section 243, subsection (b)(1) and (2), of Chapter 77 were not met because backfilling and regrading were not done in accordance with the law," so that "[DEP's] approval of the Stage I and II bond release was unreasonable, an abuse of discretion, and not in accordance with the facts or law." R.R. at 1205-06. Accordingly, EHB issued an order sustaining Landowner's appeal and vacating DEP's approval of Wayco's application for bond release. *Id.* at 1207. Wayco then filed the instant appeal.[11]

---

[11] As this Court has explained:

> Our appellate review of [EHB's] adjudications is limited to determining whether [EHB] committed an error of law, violated constitutional rights, or whether its material findings of fact are supported by substantial evidence. On issues of law, our standard of review is *de novo* and our scope of review is plenary.

> In determining whether substantial evidence of record exists to support a material factual finding, we view the record in the light most favorable to the prevailing party below, giving that party the benefit of all reasonable inferences that can be drawn from the record evidence. Substantial evidence is such "relevant evidence upon which a reasonable mind could base a conclusion." Resolution of evidentiary conflict, witness credibility, and evidentiary weight are matters committed to the discretion of [EHB]. "It is irrelevant whether the record contains evidence that would support contrary findings. Our critical inquiry is whether the findings are supported by substantial evidence."

*EQT Production Company v. Department of Environmental Protection*, 193 A.3d 1137, 1148-49 (Pa. Cmwlth. 2018) (citations omitted).

# I.

On appeal,[12] Wayco first claims that EHB erred in permitting Landowner's son to participate in the hearings as legal counsel because he is not a licensed attorney. Wayco also asserts that Landowner may not object to the bond release because he failed to exhaust his administrative remedies with respect to the issuance of the initial permit. However, Wayco failed to preserve these issues for our review by not raising them in its post-hearing brief filed with EHB. *See* R.R. at 1123. *See also* Section 1021.131(c) of EHB's regulations, 25 Pa. Code §1021.131(c) ("An issue which is not argued in a post[-]hearing brief may be waived."); Pa. R.A.P. 1551(a) ("No question shall be heard or considered by the court which was not raised before the government unit[.]"); *Wilbar Realty, Inc. v. Department of Environmental Resources*, 663 A.2d 857, 861 (Pa. Cmwlth. 1995) (holding that the owner of public water systems waived its right to challenge EHB's finding that it had committed violations of the Pennsylvania Safe Drinking Water Act[13] because it did not contest those violations in its post-hearing brief).

# II.

Wayco next claims that EHB erred in overruling its hearsay objection to Landowner's admission of a letter from the Soil Conservation District and in considering the contents of the letter for the truth of the matters asserted therein. R.R. at 86.[14] However, our review of EHB's Adjudication filed in support of its

---

[12] We consolidate and reorder Wayco's claims on appeal in the interest of clarity.

[13] Act of May 1, 1984, P.L. 43, 35 P.S. §§721.1–721.17.

[14] "Although not bound by the technical rules of evidence, [EHB] generally adheres to the Pennsylvania Rules of Evidence in its formal proceedings. *See* 25 Pa. Code §1021.123(a) **(Footnote continued on next page…)**

17

order sustaining Landowner's appeal of DEP's approval of the bond release demonstrates that the letter was not relied upon by EHB in disposing of the appeal, *see* R.R. at 1163-1206, and Wayco does not direct this Court to the portion of the Adjudication in which EHB erroneously relied upon the letter. As a result, any purported error in this regard is harmless[15] and will not serve as a basis upon which this Court will disturb EHB's order in this matter. Likewise, EHB did not commit reversible error by failing to exclude testimony by Landowner with respect to a purported oral lease as Wayco does not direct this Court to the portion of the Adjudication in which EHB relied on this testimony so that any purported error in this regard is also harmless.

## III.

Wayco next claims that EHB erred in determining that Landowner sustained his burden of proof in establishing that the Site was not returned to AOC as required by the statutory and regulatory standards for reclamation of the Site prior to the Stage I and II bond release of liability on the permits. Specifically, Wayco contends that Landowner was required to present expert testimony in order to sustain his burden of proof in this regard.

---

**(continued…)**

[("[EHB] is not bound by technical rules of evidence and relevant and material evidence of reasonable probative value is admissible. [EHB] generally applies the Pennsylvania Rules of Evidence.")]." *EQT Production Company*, 193 A.3d at 1154.

[15] To constitute reversible error, an administrative evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. An order of an administrative agency will not be disturbed based on harmless error. *Lock v. City of Philadelphia*, 895 A.2d 660, 669 (Pa. Cmwlth. 2006); *Pennsylvania Game Commission v. Bowman*, 474 A.2d 383, 390 (Pa. Cmwlth. 1984).

18

Section 1021.122(c)(2) of EHB's regulations states, in relevant part, that "[a] party appealing an action of [DEP] shall have the burden of proof . . . [w]hen a party who is not the recipient of an action by [DEP] protests the action." 25 Pa. Code §1021.122(c)(2). Thus, Wayco is correct that Landowner bore the initial burden of proof with respect to whether Wayco returned the Site to AOC before DEP could properly approve the Stage I and Stage II bond release.

However, Wayco is not correct that Landowner was required to present expert testimony in this regard. Pa. R.E. 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

As outlined above, EHB found "[Landowner's] testimony regarding the state of his property prior to Wayco's processing operations on the Site as compared with the state of his property after Wayco left to be compelling." R.R. at 1200 (citation omitted). EHB also found that "[Landowner] described the still present silt ponds on his property, which had not existed prior to Wayco's use of the Site for processing operations[,]" and that "[a]ccording to [Landowner's] testimony, the silt ponds are unsafe due to being steep and saturated." *Id.* at 1200, 1201 (citations omitted). EHB further found that "[Landowner] 'kind of figured if [Wayco] uses your property for 15 years, [it] could put it back where it was' and this was not done as water is trapped in the silt ponds and the silt is still in them." *Id.* at 1201 (citations omitted). EHB concluded, "Taken together, [EHB] finds

19

these statements to be compelling support for Wayco having failed to return the Site to AOC." *Id.*

Clearly, the foregoing lay opinion testimony is based on Landowner's perception of the Site both before and after Wayco began its operations; is helpful to EHB in determining whether the Site was returned to AOC, as defined in the statute and regulations, following Wayco's purported reclamation of the Site; and is not based on scientific, technical, or other specialized knowledge within the scope of Pa. R.E. 702. Thus, this lay testimony regarding Landowner's perception of the condition of his property both before and after Wayco commenced operations on his property, and the absence and presence of silt ponds and the retention of water therein, is competent evidence upon which EHB could rely in determining whether Wayco's reclamation of the property returned it to AOC as required by the statute and the regulations.

As one commentator has explained:

> Considerable discretion is given the trial court in determining whether the lay opinion testimony will aid the jury in reaching a just result. A witness should be permitted to testify in the form of opinions, conclusions, or observations that he or she draws through their senses. This will include such things as: the appearance of persons or things, identity, the manner of conduct, competency of a person, feeling, sound, size, weight, distance, and an endless number of things that cannot be described factually in words apart from inferences.

> * * *

> Whatever was left of the rule precluding the use of lay witness opinion testimony on the ultimate issue has been eliminated by the codification of the Pennsylvania Rules of Evidence. The "Comment" to Pa. R.E. 701 indicates that the intent of the Rule is to eliminate the

20

> rule prohibiting lay witness testimony on the ultimate
> issue, and Pa. R.E. 704 provides that opinion testimony is
> not objectionable because it embraces an ultimate issue.

Robert Berkley Harper, *Handbook of Pennsylvania Evidence*, §701[B] at 347-38 (2001) (citation omitted). *See also Commonwealth v. Berry*, 172 A.3d 1, 4 (Pa. Super. 2017) ("[Two police officers] gave permissible lay opinion testimony regarding their observations of the blood droplets while inside [the defendant's] home during their conversation with [his wife]. The trial court's determination is consistent with the holding in [*Commonwealth v. Glover*, 401 A.2d 779, 782 (Pa. Super. 1979) (citations omitted), that '[a] lay witness may testify that a certain substance appeared to be blood without having to subject the substance to chemical analysis.']").

Because Landowner sustained his initial burden of proof in this regard through the foregoing lay opinion testimony, the burden then shifted to Wayco to demonstrate that it had returned the Site to AOC through the reclamation process before the Stage I and II bond release could occur under the relevant DEP regulations. *See, e.g.*, 77 Pa. Code §77.242(a) ("The permittee may file an application with [DEP] for release of all or part of the bond liability applicable to a permit or designated phase of a permit area after reclamation . . . as defined in §77.243 (relating to criteria and schedule for release of bond), has been completed on the permit area[.]"). *See also* 25 Pa. Code §77.204(a), which states:

> (a) Liability under bonds posted for a noncoal mining
> activity shall continue for the duration of the mining
> activities and its reclamation as provided in the act, this
> chapter and the conditions of the permit for [five] years
> after completion of the mining and reclamation of the
> area, unless released in whole or in part prior thereto if
> [DEP] is satisfied that the reclamation covered by the
> bond has been accomplished as required by the act.

As outlined above, EHB specifically rejected as not credible the evidence that was presented in support of the bond release. *See* R.R. at 1200 ("[W]e find that the testimony of the multiple expert witnesses proffered by [DEP] and [Wayco] was not credible and leaves us unconvinced as to the legal basis for [DEP's] approval of Stage I and II bond release. The expert witness testimony was clearly self-serving statements that ignored key facts and was based on a fundamental misunderstanding of AOC requirements."). Moreover, EHB's determination in this regard is patently not subject to our review on appeal. *EQT Production Company*, 193 A.3d at 1148-49. As a result, we will not accede to Wayco's request to reconsider EHB's review of the substantial record evidence supporting its Adjudication reversing DEP's decision.[16]

## IV.

Finally, Wayco claims that EHB erred in overruling Wayco's objections that Landowner's arguments against the bond release were barred by the statute of limitations in Section 1021.52 of EHB's regulations[17] because

---

[16] Based on our disposition of this claim, we need not address Wayco's additional claims regarding the other criteria applicable to a bond release because its failure to return the Site to AOC through the reclamation process is a sufficient basis alone to deny the bond release. *See* R.R. at 1205 ("The requirements of Stage I and II bond release, found in Section 243, subsection (b)(1) and (2) of Chapter 77 were not met because backfilling and regrading were not done in accordance with the law. 25 Pa. Code §77.243(b)(1)-(2).").

[17] 25 Pa. Code §1021.52. Section 1021.52(a)(2)(ii) states, in relevant part, that "jurisdiction of [EHB] will not attach to an appeal from an action of [DEP] unless the appeal is in writing and is filed with [EHB] as follows[:] . . . Any other person aggrieved by an action of [DEP] shall file its appeal with [EHB] within . . . [t]hirty days after actual notice of the action if a notice of the action is not published in the Pennsylvania Bulletin." 25 Pa. Code §1021.52(a)(2)(ii).

Landowner did not file his objections within 30 days of DEP's issuance of the permit in 1994. However, as outlined above, the actions that triggered the instant proceedings were DEP's approval of Wayco's request for both Stage I and II bond release on July 21, 2016, and September 13, 2016, respectively. R.R. at 923, 925-27. Landowner appealed these DEP decisions to EHB[18] on August 10, 2016, and October 11, 2016, respectively. *Id.* at 1-4, 5-9. Thus, Wayco's allegation of error in this regard is based on the false premise that Landowner is appealing DEP's 1994 permit grant. To the contrary, the instant proceedings are clearly Landowner's appeals of DEP's approval of the Stage I and II bond release, which were clearly timely filed under Section 1021.52(a)(2)(ii) of EHB's regulations.

Accordingly, EHB's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[18] EHB *sua sponte* consolidated the appeals. R.R. at 1178.

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayco Sand and Gravel,        :
                                    :
                Petitioner     :
                                    :
                v.            : No. 713 C.D. 2018
                                    :
Department of Environmental   :
Protection and Peter Karnick,   :
                                    :
           Respondents  :

# **O R D E R**

AND NOW, this 6th day of <u>January</u>, 2020, the order of the Environmental Hearing Board dated April 24, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge